ACCEPTED
01-15-00566-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
9/11/2015 2:23:49 PM
CHRISTOPHER PRINE
CLERK

# No. 01-15-00566-CV

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
9/11/2015 2:23:49 PM
CHRISTOPHER A. PRINE
Clerk

## In the
## Court of Appeals for the
## First District of Texas

### IN RE VALERO REFINING—TEXAS, L.P.,

*Relator.*

Original Proceeding from the 212th District Court
Galveston County, Texas
Cause No. 12CV1541

### RELATOR'S UNOPPOSED MOTION TO ABATE

Valero Refining—Texas, L.P., files this motion to abate its mandamus. Along with this motion to abate, Valero has filed a motion in the trial court requesting that the trial court provide its reasons for refusing to enter judgment on the jury verdict. Valero anticipates the motion will be heard during the week of October 5, 2015, and a ruling should follow soon thereafter. To allow the trial court the opportunity to decide that motion, Valero respectfully asks for a short abatement until October 31, 2015. In support of its motion to abate this mandamus, Valero presents the following procedural history and argument:

47886_1

## PROCEDURAL HISTORY

1.    The trial court (listed as the respondent in this mandamus proceeding) is Judge Patricia Grady. Mand. Pet. at ii. Judge Grady is the current presiding judge in the underlying case who took over the 212th district court in Galveston County when Judge Griffin, her predecessor, left office after granting a new trial on December 30, 2014.

2.    Judge Grady signed an order denying Valero's motion to reconsider the order granting a new trial, on April 16, 2015. Her order states no reason for her denial of Valero's motion to reconsider the order granting the motion for new trial. R. 1:188. It states simply that "This Court, after considering the Motion is of the opinion that Defendant's Motion should, in all things, be DENIED." *Id.*

3.    Valero filed its mandamus petition on June 29, 2015, after securing the entire record of the underlying trial and all hearings, and after hiring appellate counsel to represent Valero in this Court on June 9, 2015.

4.    The mandamus petition lists two orders, which taken together, constituted the "trial court's action necessitating mandamus relief." Mand. Pet., Statement of the Case, at x. Valero continues to complain of both orders, and the relief requested in the Prayer asks for " a conditional writ of mandamus . . . compelling the trial court [Judge Grady] to vacate the new trial order and reinstating judgment on the jury's verdict." *Id.* at 36.

5. This Court ordered a response to the mandamus petition on July 9, 2015, and the Foxes filed their response to the petition, after one extension of time, on August 27, 2015.

6. On September 11, 2015, Valero filed a motion in the trial court seeking to determine Judge Grady's reasons for denying the earlier-filed motion for reconsideration. *See* Tab A, Valero's Motion Requesting the Trial Court To Provide Its Reasons For Refusing To Enter Judgment On The Jury Verdict. It is anticipated the motion will be heard during the week of October 5, 2015.

7. Valero intends to reply fully to all arguments raised in the Foxes' response, but Valero respectfully requests time to do so subject to this Court's ruling on the present motion to abate. If the motion is granted, Valero seeks leave to file its reply once Judge Grady rules on the motion pending in her court.

## ARGUMENT

Valero has asked before for Judge Grady's "analysis"—her own, independent reasons—justifying the denial of Valero's right to judgment on the jury verdict, and for an explanation why the verdict was set aside and a new trial ordered. Valero is "entitled to know those reasons just as much as it would be entitled to know the reasons for the orders entered by the former trial judge." *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 214 (Tex. 2009). This motion to abate will create the time for such a ruling.

**A.** **Valero has asked for the trial court to provide its reasons for refusing to render judgment in accord with the jury's verdict.**

In its briefing in the trial court on the motion seeking reconsideration of the new trial, Valero sought the trial court's independent analysis of why the jury verdict was overturned:

> Not only does this Court have the power to reconsider whether the jury verdict should have been disregarded in favor of a new trial, it has a responsibility to engage in such review. *In re Baylor Med. Ctr. at Garland*, 280 S.W.3d 227, 231 (Tex. 2008). Moreover, because Judge Griffin is no longer on the bench, his successor is required to reconsider his decision before an appellate court can issue a writ of mandamus. *Id.* at 228 ("Mandamus will not issue against a new judge for what a former one did."); *State v. Olsen*, 360 S.W.2d 402, 403 (Tex. 1962) ("A writ of mandamus will not lie against a successor judge in the absence of a refusal by him to grant the relief Relator seeks."); TEX. R. APP. P. 7.2(b) ("the successor [must] reconsider the original party's decision."). This Court is, therefore, *expected to apply its own, independent analysis to the issue of whether a new trial should have been ordered* and is neither bound by Judge Griffin's decision nor limited to determining whether that decision was an abuse of discretion.

Valero's Reply to Plaintiffs' Response To Defendant's Motion For Reconsideration at 2; R. 1:160 (emphasis added). Valero deserves an independent analysis of the new trial order by Judge Grady herself. Such an independent analysis would have provided *some* basis for her refusing to render judgment on the jury verdict.

**B.** **In response to Valero's request for an "independent analysis" of the new trial order, the Foxes urged Judge Grady to defer entirely to Judge Griffin's analysis and to leave his order undisturbed.**

The Foxes, who are the real parties in interest, and who obtained the new trial order from Judge Griffin, took the position in the trial court that everyone should defer to him, and leave his order intact, because "The currently presiding judge of this Court was not the one who oversaw the trial of this case or considered Fox's Motion for New Trial." Resp. to Motion for Reconsideration at 15; R. 1:157. They argued to Judge Grady that her ruling had to be limited to some type of appellate review of the new-trial order: "the present Court sits in the same position as an appellate tribunal, not having been present at the trial of this matter." Resp. to Motion for Reconsideration at 2; R. 1:144. Going further, and focusing entirely on Judge Griffin's order in the trial court, the Foxes urged Judge Grady as the successor judge to "refuse Valero's invitation to re-visit the settled Order of a judge who was there." Resp. to Motion for Reconsideration at 15; R.1:157. The Foxes argued that "the Court should be reluctant to disturb that decision." *Id.* at 8; R.1:150. Further, at oral argument on the motion, Mr. Todd urged:

> Now, we would submit that we can't second-guess Judge Griffin or we're going to get second-guessing all over the place all the time we have a circumstance like this occur.

R. 1:1929. He asked for extraordinary and unwarranted deference to Judge Griffin: "I submit that we defer to Judge Griffin." *Id.* at ROA 1942-43.

**C.** **Having directed attention only to Judge Griffin's order in the trial court, now the Foxes argue in this Court that on mandamus, "Judge Griffin's order for new trial is no longer at issue."**

In the trial court, the Foxes wanted the focus to be on Judge Griffin's order. But they now have asserted in this Court that such an approach is wrong. They run away from Judge Griffin's order here, arguing now that "Judge Griffin's order for new trial is no longer at issue," *see* Mand. Resp. at 12, even though they sprinted toward it—and only that order—in the trial court. They say it is not Judge Griffin's order that counts, and that the propriety of mandamus relief depends entirely upon Judge Grady's order denying reconsideration. *Id.*

The Foxes should not be permitted to run away from their earlier arguments in the trial court, having secured in that court an order upholding the ruling by Judge Griffin out of "deference." In truth, both orders matter, and both of them are at issue. The Foxes' response brief admits that Judge Grady's denial of reconsideration "is no less a refusal to enter judgment on the jury verdict than was Judge Griffin's," but they are incorrect in asserting that Judge Grady's order "is the only Order that counts now." Resp. to Mandamus Pet. at 13. The Foxes' bait-and-switch tactics have precipitated Valero's motion to abate this mandamus, so that if one request to Judge Grady to state her reasons before was not enough, she will have another opportunity to give them now.

**D.** **Supreme Court precedent requires Judge Grady to provide reasons for upholding the new trial.**

The Texas Supreme Court holds that when a successor trial judge "reaffirm[s] the original new trial order without giving reasons for doing so, mandamus relief [will issue] directing the trial court to provide its reasons for refusing to enter judgment on the jury verdict." *In re Baylor Medical Center at Garland*, 289 S.W.3d 859, 860 (Tex. 2009). This is not the first time that an appellate court has been asked, via a mandamus petition, for a writ that "direct[s] the trial court to specify the reasons that it refused to enter judgment on the jury verdict and affirmed the granting of a new trial." *Id.* at 861. Even when a successor judge signs "an order stating only that [her] predecessor's ruling 'should remain unchanged,'" mandamus will issue to force a successor judge to rule with reasons. *In re Cook*, 356 S.W.3d 493, 494 (Tex. 2011).

Valero is "entitled to know those reasons just as much as it would be entitled to know the reasons for the orders entered by the former trial judge." *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 214 (Tex. 2009). "[A] trial court's failure to clearly state the reasons for setting aside a jury verdict and for granting a new trial constitutes an abuse of discretion for which there is no adequate remedy by appeal." *In re Cook*, 356 S.W.3d at 495. "Reaffirming the former trial court's order [is] tantamount to granting the motion for new trial. Consequently, the successor trial court must provide its own statement of the

reasons for setting aside a jury verdict." *Id.* Based on the position the Foxes have taken in this Court, it appears all parties now agree that Judge Grady was required to provide her own reasons for refusing to enter judgment on the jury verdict. Given the opportunity, it is anticipated that Judge Grady would do so now.

### E. Abatement is a proper means to allow Judge Grady a chance to provide her reasons for upholding the new trial order.

Abatement is the "common remedy [applied] to give the successor judge an opportunity to rule on the underlying issue." *In re Gonzales*, 391 S.W.3d 251, 252 (Tex. App.—Austin 2012, orig. proceeding). In some circumstances, an abatement of a mandamus proceeding is mandatory "to allow the successor to reconsider the original party's decision." TEX. R. APP. P. 7.2(b). Valero complied with that mandatory obligation when it asked Judge Grady to reconsider the new trial order signed by Judge Griffin. However, apparently out of "deference" to Judge Griffin, there are no reasons provided in her order denying the reconsideration motion. As we argue above, those reasons are necessary, and this Court should require them.

Even in cases when abatement is not "mandatory under the rules of appellate procedure, [it] nonetheless [can] be appropriate." *See In re Gonzales*, 391 S.W.3d at 252. Abatement will permit Judge Grady an opportunity to rule on the pending motion asking her for reasons that support her order upholding the new trial. Moreover, the appellate rules permit this Court to render orders that are appropriate in the circumstances. *See* TEX. R. APP. P. 52.10(b) (allowing an appellate court to

47886_1                                      8

"grant any just relief pending the court's action on the petition"); *In re Gonzales*, 391 S.W.3d at 252-53.

An order of abatement for a definitive time period is "just relief" that would allow this Court to review Judge Grady's reasoning. In the *Gonzales* case, the time of abatement ordered by the Austin Court of Appeals was 14 days, and something like that interval would be appropriate here. Valero filed its motion in the trial court on Friday, September 11, 2015. It is anticipated the motion will be heard during the week of October 5, 2015. If she does not rule earlier, Judge Grady should be allowed at least the remainder of the month in which to provide her reasoning for refusing to render judgment on the jury verdict. Failing a ruling by October 31, 2015, this Court should order her to rule in accordance with Texas Supreme Court precedent. *In re Baylor Med. Ct.r at Garland*, 289 S.W.3d 859, 860 (Tex. 2009) (holding that if a successor judge merely "reaffirm[s] the original new trial order without giving reasons . . ., mandamus relief [should issue] directing the trial court to provide its reasons for refusing to enter judgment on the jury verdict.").

Once Judge Grady rules, the current mandamus will be pending still, and this Court can decide the core issue of whether the new trial should have been granted. Judge Grady's ruling may set aside the new trial order, but if she gives a reason or reasons for upholding it, then this Court will be able to weigh in on the

propriety of a new trial in light of her ruling. Reviewing her ruling in the current proceeding will save the parties and the judicial system the expense of time and resources that would be required to file and decide another mandamus proceeding to challenge Judge Grady's ruling. And most importantly, this Court will be able to determine the merits of the case and whether the jury verdict should be upheld. Valero asks leave to file its formal reply brief, answering all the arguments in the Foxes' response, once Judge Grady rules on the pending motion before her. If additional briefing would be helpful from the Foxes, they should also be provided the opportunity to present their arguments following a proper ruling by Judge Grady.

## PRAYER

Valero Refining—Texas, L.P., asks for an abatement of this mandamus proceeding until October 31, 2015, while the trial judge considers the motion asking her to provide her reasons for refusing to enter judgment on the jury verdict. In the event the motion is not granted, Valero asks for 14 days following the trial court's ruling in which to reply to the Foxes' response to the mandamus petition. Valero also asks for any other relief to which it is entitled.

Respectfully Submitted:

David W. Burns
State Bar No. 00785735
db@tekellbook.com
TEKELL, BOOK, ALLEN & MORRIS, LLP
1221 McKinney, Suite 4300
Houston, Texas 77010
713.222.9542–telephone
713.655.7727–facsimile

James F. Bennett
State Bar No. 46826
jbennett@dowdbennett.com
Megan Heinsz
State Bar No. 56377
mheinsz@dowdbennett.com
DOWD BENNETT, LLP
7733 Forsyth Boulevard
St. Louis, Missouri 63105
314.889.7300–telephone
314.863.2111–facsimile

HOGAN & HOGAN

By: */s/ Richard P. Hogan, Jr.*
    Richard P. Hogan, Jr.
    State Bar No. 09802010
    rhogan@hoganfirm.com
    Jennifer Bruch Hogan
    State Bar No. 03239100
    jhogan@hoganfirm.com
    James C. Marrow
    State Bar No. 24013103
    jmarrow@hoganfirm.com
Pennzoil Place
711 Louisiana, Suite 500
Houston, Texas 77002
713.222.8800–telephone
713.222.8810–facsimile

Alex M. Miller
State Bar No. 00791263
alex.miller@valero.com
THE VALERO COMPANIES
One Valero Way
San Antonio, Texas 78249
210.345.2857–telephone
210.345.4567–facsimile

ATTORNEYS FOR RELATOR VALERO REFINING—TEXAS, L.P.

## CERTIFICATE OF CONFERENCE

Counsel for Relator has conferred with counsel for Real-Parties-In-Interest,

Iain G. Simpson, and Real-Parties-In-Interest are unopposed to this motion.

/s/ Richard P. Hogan, Jr.
Richard P. Hogan, Jr.
Dated: September 11, 2015

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was forwarded to all counsel of record by the Electronic Filing Service Provider, if registered; a true and correct copy of this document was forwarded to all counsel of record not registered with an Electronic Filing Service Provider and to all other parties as follows:

Counsel for Real-Parties-In-Interest:

Iain G. Simpson
SIMPSON, P.C.
1333 Heights Boulevard, Suite 102
Houston, Texas 77008
*Via TexFile*

Alton C. Todd
THE LAW FIRM OF ALTON C. TODD
312 S. Friendswood Drive
Friendswood, Texas 77546
*Via TexFile*

Respondent:

The Honorable Patricia Grady
212th Judicial District Court
600 59th Street
Galveston, Texas 77550
*Via US Mail*

*/s/ Richard P. Hogan, Jr.*
Richard P. Hogan, Jr.
Dated: September 11, 2015

# Tab A

Motion Requesting the Trial Court to Provide Its Reasons for Refusing to Enter Judgment on the Jury Verdict

Filed: 9/11/2015 10:27:08 AM
JOHN D. KINARD - District Clerk
Galveston County, Texas
Envelope No. 6881639
By: Shailja Dixit
9/11/2015 11:45:47 AM

CAUSE NO. 12CV1541

| | | |
|---|---|---|
| VERNON FOX AND MIKKI FOX | § | IN THE DISTRICT COURT OF |
| VS. | § | GALVESTON COUNTY, TEXAS |
| NUSTAR LOGISTICS, LP., and VALERO ENERGY CORPORATION | § | 212TH JUDICIAL DISTRICT |

## MOTION REQUESTING THE TRIAL COURT TO PROVIDE ITS REASONS FOR REFUSING TO ENTER JUDGMENT ON THE JURY VERDICT

Valero Refining—Texas, L.P. respectfully files this motion in response to the Foxes' assertion that "Judge Grady's Order does not specify the reasons for her denial of Valero's Motion for Reconsideration." Inevitably, the Court will have to give its reasoning for failing to give effect to the jury's verdict. That should have happened when Valero asked for an independent analysis in the reconsideration motion. Those reasons should be given now, or the Court should reinstate the Final Judgment consistent with the jury verdict.

### SUMMARY OF MOTION

Good arguments support the relief requested in this motion—that the Court provide its reasons for refusing to enter judgment on the jury verdict. Because the jury verdict was overturned, and the new trial order was left undisturbed, both the jury and the litigants deserve to know why their trial time was wasted. Clarification is being requested now because the Foxes have run far away from what they told this Court in responding to the motion for reconsideration of the new trial order. In response to Valero's mandamus petition, the Foxes have made arguments without regard for the "considerations of consistency and continuity" that they trumpet in their mandamus brief. *See* Mand. Resp. at 14; Tab A. Their lack of continuity in argument compels this Court to explain why it will not render judgment on the jury's verdict.

Pinning down the Foxes' position should be enough justification for this motion, but there are other valid reasons.

First, Texas Supreme Court precedent has confronted this precise circumstance, when a successor trial judge reaffirms the original new trial order without giving reasons. In that circumstance, the second trial judge is supposed to state a rationale for undoing the jury verdict. Precedent demands such an order.

Second, the Foxes' bluff should be called. They pretend that Valero "sat on its hands" and did not ask for reasons to be given for this Court's denial of reconsideration. As shown below, that statement is false, but even if true, the time is right now to follow precedent and to provide a rationale.

Third, a writ of mandamus is always directed to the current office holder, who will have to obey the writ as the judge of this district court. The Foxes have admitted that "Judge Grady's Order does not specify the reasons for her . . . refusal to enter judgment on the jury verdict." See Mand. Resp. at 13; Tab A. This is an abuse of discretion. *See In re Cook*, 356 S.W.3d 493, 495 (Tex. 2011) ("[A] trial court's failure to clearly state the reasons for setting aside a jury verdict . . . constitutes an abuse of discretion."). The only question, it seems, is whether the Court will act now on its own. "[I]n the final analysis any judge sitting in the case after mandamus relief is granted would be compelled to obey [an appellate court's order to provide reasons]." *In re Schmitz*, 285 S.W.3d 451, 454 (Tex. 2009). Rather than await an order to follow precedent and give reasons after the court of appeals rules, this Court should act now. Valero has asked for an abatement of the mandamus until this Court rules on this motion, so there is time.

2

## ARGUMENT

**I.     The Foxes Have Changed Their Arguments for Upholding Judge Griffin.**

This motion is being filed because the Foxes have taken flip-flopping positions. Those inconsistent positions begin with the recent (untrue) assertion that Valero never asked before that the Court provide reasons for denying reconsideration of the new trial. In fact, Valero argued at length, in response to the Foxes' argument that this Court's powers of review were limited, that the Court not only *should* reconsider Judge Griffin's order, but that it *must* do so, and that its review should be independent. Valero's argument came in reply to the Foxes' argument that this Court should defer to Judge Griffin, and leave his order intact, because "The currently presiding judge of this Court was not the one who oversaw the trial of this case or considered Fox's Motion for New Trial." Resp. to Motion for Reconsideration at 15. Valero's position then—and now—consistently has been that it wanted the Court's independent, considered reflections on whether the jury verdict should have been disregarded:

> Not only does this Court have the power to reconsider whether the jury verdict should have been disregarded in favor of a new trial, it has a responsibility to engage in such review. *In re Baylor Med. Ctr. at Garland*, 280 S.W.3d 227, 231 (Tex. 2008). Moreover, because Judge Griffin is no longer on the bench, his successor is required to reconsider his decision before an appellate court can issue a writ of mandamus. *Id.* at 228 ("Mandamus will not issue against a new judge for what a former one did."); *State v. Olsen*, 360 S.W.2d 402, 403 (Tex. 1962) ("A writ of mandamus will not lie against a successor judge in the absence of a refusal by him to grant the relief Relator seeks."); TEX. R. APP. P. 7.2(b) ("the successor [must] reconsider the original party's decision."). This Court is, therefore, *expected to apply its own, independent analysis to the issue of whether a new trial should have been ordered* and is neither bound by Judge Griffin's decision nor limited to determining whether that decision was an abuse of discretion.

Valero's Reply at 2 (emphasis added). Valero did request an independent analysis of the new trial order. Such an independent analysis would have provided *some* basis for refusing to render judgment on the jury verdict.

After at first shining a spotlight on Judge Griffin's new trial order and arguing that this Court need not give its own reasons but should just defer to Judge Griffin, the Foxes now have filed a brief in the court of appeals that asserts such an approach is wrong. They say it is not Judge Griffin's order that counts, and that the propriety of mandamus relief depends entirely upon this Court's order denying reconsideration. They have briefed that this Court's order, "is no less a refusal to enter judgment on the jury verdict than was Judge Griffin's, and it is the only Order that counts now." Resp. to Mandamus Pet. at 13; Tab A. The inconsistency in these positions precipitates Valero's motion seeking reasons for why this Court refused to uphold the jury verdict.

## II. The Court Is Required to Provide Its Reasons For Upholding the New Trial.

### A. Supreme Court precedent demands a statement of independent reasoning from this Court for why it has not rendered judgment on the jury's verdict.

Earlier, on the motion for reconsideration, the Foxes argued: "the present Court sits in the same position as an appellate tribunal, not having been present at the trial of this matter." Resp. to Motion for Reconsideration at 2. In that role, this Court is supposed to look to Supreme Court case law. The Texas Supreme Court holds that when a successor trial judge "reaffirm[s] the original new trial order without giving reasons for doing so, mandamus relief [will issue] directing the trial court to provide its reasons for refusing to enter judgment on the jury verdict." *In re Baylor Medical Center at Garland*, 289 S.W.3d 859, 860 (Tex. 2009).

The Foxes incorrectly asserted in their earlier briefing that a successor trial judge is excused from giving reasons and should just defer to the first judge's order unless an abuse of discretion is shown. Yet there is no safe harbor provided by deferring to Judge Griffin's order, and precedent would "direct the trial court to specify the reasons that it refused to enter judgment on the jury verdict and affirmed the granting of a new trial." *Id.* at 861. Even when a successor

4

judge signs "an order stating only that [her] predecessor's ruling 'should remain unchanged,'" mandamus will issue to force a successor judge to rule with reasons. *In re Cook*, 356 S.W.3d 493, 494 (Tex. 2011).

An order with specific reasons is the right result here because this Court's order reaffirming Judge Griffin's new trial was "effectively an order refusing to enter judgment on the jury verdict and affects the rights of the parties no less than did the orders of the original judge," and Valero is "entitled to know those reasons just as much as it would be entitled to know the reasons for the orders entered by the former trial judge." *In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 214 (Tex.2009). "[A] trial court's failure to clearly state the reasons for setting aside a jury verdict and for granting a new trial constitutes an abuse of discretion for which there is no adequate remedy by appeal." *In re Cook*, 356 S.W.3d at 495. "Reaffirming the former trial court's order [is] tantamount to granting the motion for new trial. Consequently, the successor trial court must provide its own statement of the reasons for setting aside a jury verdict." *Id.* at 495. This Court should act now and follow Supreme Court precedent in providing its own rationale for denying judgment on the jury verdict.

> **B.    Contrary to the Foxes' arguments, Valero did ask before, on reconsideration of the new trial order, that this Court conduct an independent analysis and give its reasoning.**

In their mandamus response brief, the Foxes belittled Valero because, allegedly, "Valero has sat on its hands in the trial court since mid-April . . . never requesting a more specific order, and never requesting the justification or basis for Judge Grady's decision." Mand. Resp. at 12-13; Tab A. Actually, Valero has asked before, and it returns to this Court again now because, as the case law directs, the Court is supposed to say why it has not rendered the judgment that the jury expected and that Valero deserves.

5

Nevertheless, apparently the Foxes were successful in convincing this Court that it did not need to conduct an independent analysis or do its own reasoning—instead asking that this Court "refuse Valero's invitation to re-visit the settled Order of a judge who was there," and presuming that this Court should act only as an appellate reviewer, looking for an abuse of discretion. Resp. to Motion for Reconsideration at 15, 3-4, 7-8. The Foxes sought to leave Judge Griffin's order alone, arguing "the Court should be reluctant to disturb that decision." *Id.* at 8. And further, at oral argument on the motion for reconsideration, Mr. Todd urged the Court not to look too hard at what Judge Griffin had done, or the floodgates would come unhinged:

> Now, we would submit that we can't second-guess Judge Griffin or we're going to get second-guessing all over the place all the time we have a circumstance like this occur.

Hearing Tr. 03/13/15, ROA at 1929; Tab B. In no uncertain terms, Mr. Todd asked this Court to give extraordinary and unwarranted deference to Judge Griffin: "I submit that we defer to Judge Griffin." *Id.* at ROA 1942-43; Tab B.

Those attempts to divert this Court from its duty under Supreme Court precedent, and to focus entirely on Judge Griffin's order, are incorrect and inconsistent. Despite their earlier arguments, now the Foxes argue on mandamus, "Judge Griffin's order for new trial is no longer at issue." Mand. Resp. at 12; Tab A. The Foxes should not be permitted to run away from their earlier arguments now, having secured this Court's order upholding the ruling by Judge Griffin out of deference.

## C.     This Court would be compelled to act if mandamus relief is granted.

The Foxes have argued in the appellate court that "Judge Griffin is not the Respondent in this case and is not the one who would be compelled to act by any writ issued by this Court." Resp. Mand. Pet. at 12; Tab A. In truth, as Justice Scott Brister has written, it really does not matter who the judge is: "[T]he writ must be directed to someone, but in the final analysis any

6

judge sitting in the case after mandamus relief is granted would be compelled to obey it." *In re Schmitz*, 285 S.W.3d 451, 454 (Tex. 2009). Therefore, the sitting judge in this Court is being asked to act first, before a writ issues that would direct an independent analysis of the new trial order.

## PRAYER

The motion should be granted and, following precedent, the Court should "specify the reasons why it refused to enter judgment on the jury verdict." *See In re Columbia Med. Ctr. of Las Colinas*, 290 S.W.3d 204, 215 (Tex.2009) (requiring "clearly identified and reasonably specific" reasons); *In re Cook*, 356 S.W.3d 493, 495-96 (Tex. 2011). Alternatively, the Court should reinstate the Final Judgment consistent with the jury verdict. Valero asks for all relief to which it is entitled.

Respectfully submitted,

TEKELL, BOOK, ALLEN & MORRIS, LLP

By: /s/ David W. Burns
    David W. Burns
    State Bar No. 00785735
    db@tekellbook.com
1221 McKinney, Suite 4300
Houston, Texas 77010
713.222.9542–telephone
713.655.7727–facsimile

DOWD BENNETT, LLP

James F. Bennett
State Bar No. 46826
jbennett@dowdbennett.com
Megan Heinsz
State Bar No. 56377
mheinsz@dowdbennett.com
7733 Forsyth Boulevard
St. Louis, Missouri 63105
314.889.7300–telephone
314.863.2111–facsimile

HOGAN & HOGAN

By: /s/ Richard P. Hogan, Jr.
    Richard P. Hogan, Jr.
    State Bar No. 09802010
    rhogan@hoganfirm.com
    Jennifer Bruch Hogan
    State Bar No. 03239100
    jhogan@hoganfirm.com
    James C. Marrow
    State Bar No. 24013103
    jmarrow@hoganfirm.com
Pennzoil Place
711 Louisiana, Suite 500
Houston, Texas 77002
713.222.8800–telephone
713.222.8810–facsimile

THE VALERO COMPANIES

Alex M. Miller
State Bar No. 00791263
alex.miller@valero.com
One Valero Way
San Antonio, Texas 78249
210.345.2857–telephone
210.345.4567–facsimile

ATTORNEYS FOR VALERO REFINING—TEXAS, L.P.

8

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and foregoing was forwarded to all counsel of record by the Electronic Filing Service Provider, if registered; a true and correct copy of this document was forwarded to all counsel of record not registered with an Electronic Filing Service Provider and to all other parties as follows:

Iain G. Simpson
SIMPSON, P.C.
1333 Heights Boulevard, Suite 102
Houston, Texas 77008
*Via EFile*

Alton C. Todd
THE LAW FIRM OF ALTON C. TODD
312 S. Friendswood Drive
Friendswood, Texas 77546
*Via EFile*

/s/ *David W. Burns*
David W. Burns
Dated: September 11, 2015

## CERTIFICATE OF CONFERENCE

This matter has been discussed with opposing counsel, Alton Todd, and he is opposed to Movant's request under the motion.

/s/ *David W. Burns*
David W. Burns
Dated: September 11, 2015

# TAB  A

ACCEPTED
01-15-00566-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
8/27/2015 3:27:53 PM
CHRISTOPHER PRINE
CLERK

No. 01-15-00566-CV

IN THE

FIRST COURT OF APPEALS

AT HOUSTON, TEXAS

IN RE VALERO REFINING – TEXAS, L.P.,

Original Proceeding arising from Cause No. 12CV1541, in the 212th District Court of Galveston County, Texas

**REAL PARTY IN INTEREST'S
RESPONSE TO PETITION FOR WRIT OF MANDAMUS**

SIMPSON, P.C.

Iain G. Simpson
State Bar No. 00791667
1333 Heights Blvd., Suite 102
Houston, Texas 77008
(281) 989-0742
(281) 596-6960 – fax
iain@simpsonpc.com

APPELLATE COUNSEL FOR
REAL PARTIES IN INTEREST
VERNON FOX AND MIKKI FOX

ORAL ARGUMENT CONDITIONALLY REQUESTED

## IDENTITY OF PARTIES AND COUNSEL

**Real Parties in Interest:**

Vernon Fox and Mikki Fox

**Counsel for Real Parties in Interest:**

Alton C. Todd
THE LAW FIRM OF ALTON C. TODD
312 S. Friendswood Drive
Friendswood, Texas 77546
281-992-8633
281-648-8633 – facsimile

TRIAL COUNSEL

Iain G. Simpson
SIMPSON, P.C.
1333 Heights Boulevard, Suite 102
Houston, Texas 77008
281-989-0742
281-596-6960 – facsimile

APPELLATE COUNSEL

ii

## TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ........................................................ii

INDEX OF AUTHORITIES...........................................................................vi

STATEMENT REGARDING ORAL ARGUMENT.....................................ix

RESPONSIVE ISSUES PRESENTED ............................................................1

STATEMENT OF FACTS..............................................................................1

SUMMARY OF THE ARGUMENT .............................................................7

ARGUMENT...............................................................................................10

    The Standard of Review...................................................................10

    Responsive Issue One.......................................................................11

Mandamus cannot issue against a successor judge for her predecessor's order. Valero attacks the wrong order and asks for the wrong relief. Valero's Petition must be denied.

    A.    *Judge Griffin's Order for new trial is no longer at issue.* ..............................................................................12

    B.    *Judge Grady's Order does not state her basis, and Valero never asked Judge Grady to do so.* ...............12

    Responsive Issue Two .......................................................................14

Judge Grady's reasons for declining to reconsider Judge Griffin's order may include considerations of judicial consistency and continuity within the case and her court, as well as recognition that her predecessor was actually present for trial and able to view witness testimony. Such

considerations are anything but unguided and unprincipled. They cannot be an abuse of discretion.

    **A.** *Consistency of decisions within a single case is a valid judicial concern.* ........................ 14

    **B.** *Decision of the case at bar and the trial court's order for new trial rested upon the credibility of many witnesses, none of whose testimony Judge Grady was able to hear in person.* ................................... 15

    **C.** *Both considerations of consistency and lack of opportunity to weigh the credibility of witnesses may constitute good cause for allow Fox's new trial to proceed.* ................................. 17

**Responsive Issue Three** ................................. 18

Should the Court decide to consider it, Judge Griffin's Order was supported by his own observation of all witnesses during testimony in open court and his evaluation of their credibility.

    **A.** *Valero's experts never testified that Fox's experts were wrong.* ................................. 18

    **B.** *Fox presented evidence that, even if subjective, is still evidence.* ................................. 19

**Responsive Issue Four** ................................. 21

Evidence showed that Fox suffered physical injury from chemical exposure that is more than just mental anguish and that demonstrated both specific and general causation.

A.   *Valero mischaracterizes and minimizes the nature of Fox's injury in an effort to make its point.* .................................................................21

B.   *Valero never actually argues that Fox failed to show general causation.* ...................................................22

C.   *Fox presented evidence of specific exposure to particular toxins.* ...............................................................23

**CONCLUSION** ................................................................................24

**PRAYER** ...........................................................................................25

**CERTIFICATE OF COMPLIANCE** ...........................................26

**CERTIFICATE OF SERVICE** .......................................................27

# INDEX OF AUTHORITIES

## _Cases_

_Borg-Warner v. Flores,_
  232 S.W.3d 765 (Tex. 2007) .................................................................... 23

_Coastal Tankships, U.S.A., Inc. v. Anderson,_
  87 S.W.3d 591 (Tex. App.—Houston [1st Dist.] 2002,
  pet. denied). .......................................................................................... 22

_Downer v. Aquamarine Operators,_
  701 S.W.2d 238 (Tex. 1985) .................................................................... 10

_E.I. du Pont de Nemours & Co. v. Robinson,_
  923 S.W.2d 549 (Tex. 1995) .................................................................... 19

_Holloway v. Fifth Court of Appeals,_
  767 S.W.2d 680 (Tex. 1989) .............................................................. 10, 13

_In re Anna C. Smith,_
  332 S.W.3d 704 (Tex. App.—Texarkana 2011,
  orig. proceeding). .................................................................................. 20

_In re Baylor Med. Ctr. at Garland ("Baylor I"),_
  280 S.W.3d 227 (Tex. 2008) .................................................................... 11

_In re Baylor Med. Ctr. at Garland ("Baylor II"),_
  289 S.W.3d 859 (Tex. 2009) .................................................................... 12

_In re Columbia Med. Ctr. of Las Colinas,_
  290 S.W.3d 204 (Tex. 2007) .............................................................. 12, 17

_In re Cook,_
  356 S.W.3d 493 (Tex. 2011) .............................................................. 12, 13

*In re Prudential Ins.,*
    148 S.W.3d 124 (Tex. 2003) ................................................. 10

*In re Schmitz,*
    285 S.W.3d 451 (Tex. 2009) ................................................. 11

*In re Toyota Motor Sales,*
    407 S.W.3d 746 (Tex. 2014) ................................................ 20

*In re United Scaffolding,*
    377 S.W.3d 685 (Tex. 2012) ............................................ 13, 17

*Paradigm Oil v. Retamco Operating,*
    372 S.W.d 177 (Tex. 2012) .................................................. 15

*Slaughter v. Abilene State School,*
    561 S.W.2d 789 (Tex. 1977) ................................................ 19

*Tilton v. Marshall,*
    925 S.W.2d 672 (Tex. 1996) ................................................ 10

*Walker v. Packer,*
    827 S.W.2d 833 (Tex. 1992) ................................................ 10

## *Rules*

TEX. R. APP. P. 7.2 ................................................................. 7, 11

TEX. R. CIV. P. 320 .................................................................. 16

## *Secondary Sources*

Michael Henke and Craig Margolis, *The Taking and Use of Video
    Depositions: An Update,* 17 Rev. Litig. 1, 14 n. 56 (Winter,
    1998). ................................................................................. 16

Stephanie A. Vaughan, *Persuasion Is an Art ... But It is Also an Invaluable Tool in Advocacy*, 61 BAYLOR L. REV. 635, 672 n. 238 (2009)................................................................................ 16

Jansen Voss, *The Science of Persuasion: An Exploration of Advocacy and the Science Behind the Art of Persuasion in the Courtroom*, 29 L. & PSYCHOL. REV. 201, 216 (2005)............................. 16

## STATEMENT REGARDING ORAL ARGUMENT

Real Parties in Interest, Vernon Fox and Mikki Fox (together, "Fox), request oral argument in this matter but only conditionally and only because Relator, Valero Refining—Texas, L.P., has done so. In truth, Fox believes that little reason exists for the Court to hear oral argument in this matter. Should the Court even reach the majority of the record in this case, a review of that record is all that is necessary for the Court's decision. Oral argument can shed minimal additional light. Consequently, should the Court grant oral argument to Valero, Fox requests equal time. Otherwise, Fox waives oral argument.

## RESPONSIVE ISSUES PRESENTED

1.  Mandamus cannot issue against a successor judge for her predecessor's order. Valero attacks the wrong order and asks for the wrong relief. Valero's Petition must be denied.

2.  Judge Grady's reasons for declining to reconsider Judge Griffin's order may include considerations of judicial consistency and continuity within the case and her court, as well as recognition that her predecessor was actually present for trial and able to view witness testimony. Such considerations are anything but unguided and unprincipled. They cannot be an abuse of discretion.

3.  Should the Court decide to consider it, Judge Griffin's Order was supported by his own observation of all witnesses during testimony in open court and his evaluation of their credibility.

4.  Evidence showed that Fox suffered physical injury from chemical exposure that is more than just mental anguish and that demonstrated both specific and general causation.

## STATEMENT OF FACTS

On January 12, 2011, Valero's Texas City refinery released crude oil from a storage vessel in its tank farm, due to overfilling. Droplets of crude oil crossed the road where Vernon Fox, an employee of BP, traveled that day. This much is firmly established by the evidence, and no one disputes it. Fox was on the road near the release when it occurred. Fox testified to

1

it, and no one disputes it.

In its briefing, Valero suggests that Fox was not exposed to anything from the spill until approximately an hour after the overflow had been stopped. Valero's Petition, at 2. It also notes that Fox had a $H_2S$ monitor on his person that was not triggered. *Id.* But Fox's testimony is somewhat different. Fox testified that he was aware of unusual "smells" when he passed by Valero's tank farm on the way to check a valve that morning, though he did not see anything overflowing. ROA 1:933-44. He testified that those "smells" were much stronger on the return leg of his journey. ROA 1:945. While Fox had his $H_2S$ monitor in the cab of his truck, he was not wearing it at the time. ROA 1:945. It was on his jacket, which was on the truck seat beside him. *Id.* On the return leg of his journey, Fox described driving into a "vapor cloud." ROA 1:946. Perceiving an unsafe situation that needed to be addressed and intending to look for a leak, Fox stopped his truck and exited the cab, leaving his $H_2S$ monitor behind. *Id.* Having observed a spill, Fox returned to his office where he contacted Valero concerning the spill. ROA 1:947. Fox testified that he was shaken by the realization that he had been exposed to a chemical or chemicals that could have been ignited, even as he stood there. ROA 1:947-48. Later that

2

day, Fox's supervisor sent him home. ROA 1:948-49. The disputes arise with regard to Fox's claimed harm. Valero's argument is that Fox was "faking it."

As both fact and expert witness, Fox presented evidence concerning his course of treatment by Dr. Ly, his treating psychiatrist, who diagnosed Fox with a major depressive disorder. He also presented evidence from Dr. Polk, a clinical psychologist, who cared for and treated Fox for a considerable period. ROA 1:733. Dr. David Axelrad is a psychiatrist and neuropsychiatrist who examined Fox at the request of his counsel. ROA 1:1175. Dr. Axelrad has specific experience treating patients with post-traumatic stress disorder (PTSD). ROA 1:1180, 1:1193. Dr. Axelrad testified that PTSD is a form of physical brain injury resulting from the release of excess stress chemicals. ROA 1:1266. When under stress, the body releases cytokines that promote an inflammatory response. ROA 1:1205. This is more than simple anxiety, but an actual physical response to extreme stress.

Dr. Axelrad testified that Fox suffers from a major neurocognitive disorder, resulting from physical brain injury secondary to exposure to neurotoxins. ROA 1:1197-98. These brain injuries and the resulting

3

neurocognitive disorder manifest in major impacts on his behavior. ROA 1:1198. Dr. Axelrad also noted that, where a person has suffered brain injury and potentially life-threatening circumstances, this can lead to the development of PTSD. ROA 1:1201. Dr. Axelrad observed that multiple professionals—a clinical psychologist following Fox over a period of time and a treating psychiatrist—diagnosed Fox with PTSD. ROA 1:1202. He also testified that, in his estimation, Fox meets the criteria for a PTSD diagnosis. *Id.*

Dr. Priscilla Ray is a psychiatrist, brought to trial as an expert witness by Valero. Dr. Ray testified that Dr. Ly—Fox's treating psychiatrist—followed appropriate standards of care in treating him, prescribing psychotherapy and medication. ROA 1:1501-02. Dr. Ray testified that Fox claimed symptoms consistent with the disorders he claims and that Dr. Ly prescribed appropriate medication for post-traumatic stress disorder (PTSD). ROA 1:1503-04. Dr. Ray also agreed that, if Fox did not show particular symptoms of PTSD upon her examination of him, this could be due to the fact that medication he was prescribed for that condition was actually working. ROA 1:1502.

4

Dr. Ray testified that Fox suffered from major depression and from a somatic symptom disorder. ROA 1:1524. She acknowledged that he showed no such symptoms before his exposure to the chemical release. ROA 1:1523-24. She acknowledged that, before this incident, he was a healthy, happy family man, one who enjoyed working. ROA 1:1523. She acknowledged that Fox reported feeling "defeated" and that Dr. Axelrad—who diagnosed Fox with PTSD—could be right. ROA 1:1525. She said that, even in her own opinion, Fox could have "a major depressive disorder." ROA 1:1525-26.

Dr. Ray's explanation for Fox's situation is "malingering" in pursuit of an "external incentive"—money. ROA 1:1522. She testified that pursuit of a lawsuit or disability payments could have motivated him. ROA 1:1520-21. But she could provide no explanation as to why Fox continued to work for a year following his exposure, and used up his sick time and vacation time in that spell. *Id.* She also could provide no explanation as to why a "malingerer" would wait over a year, post-accident, to consult a lawyer. *Id.*

Dr. Ray confirmed that Fox was diagnosed with a major depressive disorder by multiple doctors. ROA 1:1532. She confirmed that Dr. Ly

5

mentions his suicidal ideation. ROA 1:1549. This occurred in September 2011, prior to any discussion with Dr. Axelrad, Fox's expert witness. ROA 1:1551. The diagnosis and symptoms discussed, up to that point, came solely from Fox's treating health care and mental health care providers. Dr. Ray was asked about Fox's anxiety about returning to work and agreed that it could arise from returning to the location where his chemical exposure occurred. ROA 1:1559. She recognized the recommendation that he take time away from work because of possible safety concerns related to his anxiety and PTSD and that this time away was recommended by his treating health care providers. ROA 1:1560. Again, she recognized that this was prior to any meeting with Dr. Axelrad. ROA 1:1560-61.

Dr. David Rosenfield is a neurologist and expert witness retained by Valero. ROA 1:1572. In his testimony, Dr. Rosenfield confirmed his understanding that, among the chemical components to which Vernon Fox would have been exposed were hydrogen sulfide (referred to throughout the proceedings as "$H_2S$") and benzene. ROA 1:1630-31. Dr. Rosenfield observed that the fact of exposure was not dependent upon the amount of oil or chemicals spilled. ROA 1:1631. Dr. Rosenfield confirmed that $H_2S$ is a neurotoxin and can create neurocognitive deficits. ROA 1:1617. It can

6

also cause a number of other symptoms, including headache, dizziness, weakness, exhaustion, irritability, and insomnia. ROA 1:1621-22. Dr. Rosenfield confirmed that these were symptoms described by Fox. ROA 1:1623-24. OSHA instructs that, at lower concentrations, the effects of exposure can be delayed. ROA 1:1623.

Dr. Rosenfield confirmed that $H_2S$ exposure can occur through inhalation or through eye or skin contact. ROA 1:1621. While apparently disputing Fox's testimony at trial, he testified in his deposition that Fox was most likely exposed to chemical vapors. ROA 1:1633-34. Finally, Dr. Rosenfield confirmed that breathing in $H_2S$ can interfere with the enzyme cytochrome oxidase, an enzyme necessary for brain cells' use of oxygen. ROA 1:1644-45. That interference with oxygen use can cause damage to the brain. *Id.*

## SUMMARY OF THE ARGUMENT

Valero makes much of Hon. Brent Griffin issuing his Order for a new trial on his final day in office, and it spends almost its entire petition attacking the correctness and propriety of Judge Griffin's Order. But it is not Judge Griffin's Order that is in question. A writ of mandamus must be directed to someone, and that someone cannot be an official who no longer

7

holds office. Such is the rationale for TEX. R. APP. P. 7.2(b), which provides for abatement of an original proceeding in order to allow a new office holder to reconsider the actions and orders of her predecessor and provide opportunity to give her own opinion and grounds to justify or refute such an order. That is both the situation here and not the situation here.

Two trial judges, not just one, rejected Valero's position. Valero attacks the wrong order and provides an insufficient mandamus record. Valero attacks Judge Griffin's Order, but it is Hon. Patricia Grady's Order on Valero's Motion for Reconsideration that holds sway. It is Judge Grady who is the Respondent in this matter, and Judge Grady took office and considered the issues at bar well before Valero filed the current Petition. Yet, even knowing that appropriate specificity of a new trial order was an issue in this matter—having pressed it as part of its Motion for Reconsideration (ROA 137-139)—Valero sat on its hands as Judge Grady signed a single-page Order denying its Motion for Reconsideration and cementing Fox's right to a new trial. ROA 188. Valero never protested or sought any greater detail, and the bases for Judge Grady's Order are a mystery. Mysteries cannot support mandamus. Valero argues that judgment on the jury's verdict should have been entered but never sought

8

an explanation as to why it was not. What Valero seeks by way of mandamus this Court cannot grant.

Even so, the potential bases for Judge Grady's Order range beyond what could have been contemplated by Judge Griffin. Maintaining consistency and continuity of judicial decision-making within a Court and a single case; the simple fact that Judge Griffin was able to evaluate the credibility of each witness in open court rather than from a cold record, these are factors that might well have figured in Judge Grady's calculus. As Valero itself admits, the case is largely about credibility. Contrary to Valero's position, however, jurors are not the only ones who evaluate witness credibility. Short of a finding that such reasons are "no reason," Judge Grady's Order cannot be an abuse of discretion.

Finally, even if the Court should delve back into the activities of Judge Grady's predecessor, it will find that Judge Griffin's Order was well within the bounds of his discretion. Valero's own expert witnesses could not rule out Fox's claim to damages, and, even as Valero criticizes Fox's description of symptoms as entirely subjective, its own experts throw around a "diagnosis" of "malingering"—a subjective estimation, if ever there were.

9

## ARGUMENT

### The Standard of Review

Mandamus is an extraordinary remedy, reserved for use in instances of manifest and urgent necessity. *Holloway v. Fifth Court of Appeals*, 767 S.W.2d 680, 684 (Tex. 1989). It is not issued as a matter of right, but solely at the discretion of the court, *In re Prudential Ins.*, 148 S.W.3d 124, 138 (Tex. 2003), and only when the relator "satisfies a heavy burden of establishing 'compelling circumstances.'" *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). "As a selective procedure, mandamus can correct clear errors in exceptional cases and afford appropriate guidance to the law without the disruption and burden of interlocutory appeal." *Id.* But the Court may issue mandamus only when the relator demonstrates and the Court finds that (1) the trial court has committed a clear abuse of discretion and (2) the relator lacks any adequate remedy at law. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992).

A trial court abuses its discretion only if it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators*, 701 S.W.2d 238, 241-42 (Tex. 1985). The question is not whether the reviewing court believes the trial court's action appropriate or correct. *Id.* Valero

10

argues steadily concerning what the jury could have found, but it fails to focus on what the trial court did find. As relator in a mandamus proceeding, it is not enough for Valero to state that its sought after result is a reasonable, permissible outcome. It must argue that it is the *only* outcome consistent with the law.

### Responsive Issue One

> Mandamus cannot issue against a successor judge for her predecessor's order. Valero attacks the wrong order and asks for the wrong relief. Valero's Petition must be denied.

Although a particular respondent is not critical in a mandamus proceeding, the writ must be directed to someone. *In re Schmitz*, 285 S.W.3d 451, 454 (Tex. 2009). And generally a writ will not issue against one judge for what another did. *In re Baylor Med. Ctr. at Garland*, 280 S.W.3d 227, 228 (Tex. 2008) ("Baylor I"). Thus, in an original proceeding where the judge who signed the order at issue has "cease[d] to hold office," an appellate court "must abate the proceeding to allow the successor to reconsider the original party's decision." TEX. R. APP. P. 7.2. Consequently, the Texas Supreme Court has refused to consider the reasons given by a first trial judge in a new trial order, when it was a successor's refusal to reconsider

11

the order that was at stake. *See In re Baylor Med. Ctr. at Garland,* 289 S.W.3d, 859, 860 (Tex. 2009) ("Baylor II").

### A. *Judge Griffin's Order for new trial is no longer at issue.*

Valero complains — exclusively — about the actions of Judge Griffin. It explores and examines Judge Griffin's new trial order. But Judge Griffin is no longer the judge of the 212th District Court. Judge Griffin ceased being the judge of that Court long before Valero ever filed its Petition for Writ of Mandamus. And Judge Griffin is not the Respondent in this case and is not the one who would be compelled to act by any writ issued by this Court. "As in *Columbia* and *Baylor II* . . . the former trial court's order is no longer at issue here, as the successor trial judge has since issued a subsequent order." *See In re Cook,* 356 S.W.3d 493, 495 (Tex. 2011) (citing *In re Columbia Med. Ctr. of Las Colinas,* 290 S.W.3d 204 (Tex. 2007).).

### B. *Judge Grady's Order does not state her basis, and Valero never asked Judge Grady to do so.*

Even as it raised the alleged dearth of specificity of Judge Griffin's Order in its Motion for Reconsideration (ROA 137-139), Valero has sat on its hands in the trial court since mid-April, when Judge Grady denied that Motion, never requesting a more specific order, and never requesting the

justification or basis for Judge Grady's decision. And now, Valero comes to this Court in the name of "manifest and urgent necessity." *See Holloway*, 767 S.W.2d, at 684. Valero simply cannot demand the Court exercise its extraordinary writ power under such circumstances.

Judge Grady's Order does not specify the reasons for her denial of Valero's Motion for Reconsideration. ROA 188. Yet that Order is no less a refusal to enter judgment on the jury verdict than was Judge Griffin's, and it is the only Order that counts now. *See Cook*, 356 S.W.3d, at 494. The Court may not presume that, simply because a valid basis is not stated in the Order, that Judge Grady did not have one. *See In re United Scaffolding*, 377 S.W.3d 685, 690 (Tex. 2012) (trial court's failure to state why it granted a new trial does not mandate a conclusion that it did not have a valid reason for doing so). Valero's failure to request Judge Grady's rationale leads directly to a failure of its mandamus record, and the Court need read no further. Because Valero does not present a record that contains this crucial information, everything else in the record is irrelevant. The record Valero provides is wholly insufficient to show Valero's right to the relief it seeks. Valero's Petition must be denied.

13

## Responsive Issue Two

Judge Grady's reasons for declining to reconsider Judge Griffin's order may include considerations of judicial consistency and continuity within the case and her court, as well as recognition that her predecessor was actually present for trial and able to view witness testimony. Such considerations are anything but unguided and unprincipled. They cannot be an abuse of discretion.

Valero's burden in its Petition is to show that Judge Grady acted arbitrarily and without reference to any guiding principle in her denial of Valero's Motion for Reconsideration. As has already been argued, Valero cannot show why Judge Grady acted as she did, at all, because Valero never asked her. Nevertheless, as the new judge of a trial court being asked to reconsider the actions of her predecessor, Judge Grady faced concerns distinct from those of Judge Griffin.

### A. Consistency of decisions within a single case is a valid judicial concern.

Valero bases its arguments on what the jury could have found, rather than reviewing what the trial court actually did find. It was the latter that was the basis for its order, not what is cited by Valero. Of course, once again, Valero did not inquire about that basis. That said, consistency of judicial decision-making, particularly within a single case, is a valid

concern for any court. *See, e.g., Paradigm Oil v. Retamco Operating*, 372 S.W.3d 177, 182 (Tex. 2012) (noting the effect of the "law of the case" doctrine). The "law of the case" doctrine applies to questions of law, however, the concerns underpinning it are no less valid when applied to factual determinations and applicability of legal standards. As the newly elected judge of the 212th District Court, Judge Grady may well have been reluctant to go down a path of reconsidering her predecessor's orders, wholesale. If she were to do so in one case, she might be expected to in every case. Mandamus exists to correct clear errors in extraordinary cases. It does not exist to allow litigants to nitpick trial court decisions and press appellate courts to micromanage trial court cases and dockets.

> **B.** **Decision of the case at bar and the trial court's order for new trial rested upon the credibility of many witnesses, none of whose testimony Judge Grady was able to hear in person.**

As the only judge who was present in the courtroom for the trial of this matter and the testimony of each witness, Judge Griffin was in a position to see what neither Judge Grady nor this Court can see. Valero itself states that the overriding factor in determining the outcome of this case is credibility. While Valero cites, in particular, Vernon Fox's credibility, the credibility of every witness is significant. Fox's testimony is

15

of particular significance because the centerpiece of Valero's argument is not that he was not exposed to any harmful chemical, but that he is faking his symptoms.

Judge Griffin was able to see and hear each witness — including Fox — testify, rather than relying upon a cold record. Because credibility is such an issue in this matter, Judge Grady was entirely justified in leaving her predecessor's new trial order undisturbed. She had only a transcript before her and could not evaluate the testimonial demeanor of the witnesses.[1] Her reluctance to backtrack from Judge Griffin's order under such circumstances cannot constitute an abuse of her discretion.

C.    *Both considerations of consistency and lack of opportunity to weigh the credibility of witnesses may constitute good cause for allowing Fox's new trial to proceed.*

The Texas Supreme Court has expressly declined to define what constitutes the "good cause" for which TEX. R. CIV. P. 320 permits a new

---

[1]    Further, psychologists suggest that non-verbal communication accounts for 65 to 70 percent of the total communication between humans. Stephanie A. Vaughan, *Persuasion Is an Art ... But It is Also an Invaluable Tool in Advocacy*, 61 BAYLOR L. REV. 635, 672 n. 238 (2009) (citing Jansen Voss, *The Science of Persuasion: An Exploration of Advocacy and the Science Behind the Art of Persuasion in the Courtroom*, 29 L. & PSYCHOL. REV. 201, 216 (2005). Other estimates place the figure higher. Michael Henke and Craig Margolis, *The Taking and Use of Video Depositions: An Update*, 17 Rev. Litig. 1, 14 n. 56 (Winter, 1998) ("One commentator has suggested that as much as 60% to 93% of all communication is non-verbal."). Again, this sort of communication was something Judge Griffin could see that Judge Grady could not.

trial. *See In re Columbia*, 290 S.W.3d, at 210 n. 3. In the same case, the Court reiterated the broad discretion that trial courts have to grant new trials. 290 S.W.3d, at 210. Absent any authority suggesting that consistency of practice and limitations on Judge Grady's ability to evaluate the effect of witness testimony are *not* valid considerations, the Court should presume that they are. Again, Valero failed to ask Judge Grady about the reasons for her Order, but both of the above-raised grounds were a part of Fox's response to Valero's Motion for Reconsideration. ROA 1:143-58. "In most cases a new trial will be granted for reasons stated in a motion for new trial, so that such an explanation will alert the parties to the reason the judge found persuasive, further illuminating the substantive basis for the order." *In re United Scaffolding*, 377 S.W.3d, at 688. Based on this, Valero is on notice of both of the above-stated rationales, yet still fails to attack either in its Petition. Once again, Valero's Petition fails and must be denied.

## Responsive Issue Three

Should the Court decide to consider it, Judge Griffin's Order was supported by Fox's expert witness testimony that linked his chemical exposure to his PTSD and depression, and Valero's experts even admitted that testimony could be correct.

Fox testified to the fact of his own chemical exposure. ROA 1:946. His physician and psychologist experts gave information concerning Fox's major depressive disorder, and Dr. Axelrad testified as to how the exposure could lead to PTSD—a physical condition with behavioral manifestation. Three experts—Drs. Polk, Pollock, and Axelrad—testified that the severe depression and major depressive disorder suffered by Fox resulted from his chemical exposure.

### A.    *Valero's experts never testified that Fox's experts were wrong.*

But even more telling is the testimony of Drs. Ray and Rosenfield, both retained by Valero.  Despite Dr. Ray offering an alternative explanation for Fox's symptoms from that posited by Dr. Axelrad, she never testified that Dr. Axelrad was wrong.  Indeed, she testified that he could be right.  ROA 1:1525.  Likewise, Dr. Rosenfield—who never actually examined or met Fox—confirmed that Fox's claimed route of $H_2S$ exposure is a genuine avenue of such exposure and that $H_2S$ is a neurotoxic

18

substance that can cause the sort of neural deficits and problems of which Fox complains. ROA 1:1617. Dr. Rosenfield also testified to the physical damage that such exposure can cause, interfering with the brain's use of oxygen and causing damage to brain cells. ROA 1:1644-45. But, once again, this does not contradict the position taken by Fox's experts who had been treating him for months and—unlike Dr. Rosenfield—had actually spoken to him. The trial court's acceptance of uncontroverted evidence as suggestive that the jury has erred can hardly be an abuse of discretion.

### B. Fox presented evidence that, even if subjective, is still evidence.

Valero's primary complaint appears to be, not that there is no evidence to support Fox's position and the trial court's decision, but that Fox's symptoms are, at least to some degree, subjective and are not easily verifiable by objective means. This does not mean, however, that they are not evidence. *See Slaughter v. Abilene State School*, 561 S.W.2d 789, 791 (Tex. 1977) (expert testimony based upon case history given by patient, physical examination, and x-rays, reciting opinion "consistent with" patient's complained of symptoms was admissible). Nor does it mean that the

19

expert opinions based upon those symptoms are, of necessity, unreliable.[2] *Id.* Evidence that Valero discounts is, nonetheless, evidence. It is not Valero's job to say what the trial court found convincing; it is the trial court's job.

The combination of testimony from multiple retained and non-retained expert witnesses, as cited by the Court, is more than sufficient to justify its Order. *See In re Anna C. Smith*, 332 S.W.3d 704 (Tex. App.—Texarkana 2011, orig. proceeding) (finding that order reciting witness testimony in general terms was sufficient to meet requirements of *In re Columbia Med. Ctr.*). It is not sufficient that Valero argue what the jury was "free to find." It must attack—entirely—what the Court did find. Provided that the basis for the Court's Order is not contradicted by the record—and it is not—there is no basis for the Order to be re-visited. *Cf. In re Toyota Motor Sales*, 407 S.W.3d 746, 761 (Tex. 2014). To the extent that it was Judge Griffin's job to say, if asked, what he found convincing, he did so. To the extent that it was Judge Grady's job to do so, again, Valero never asked.

---

[2] Moreover, reliability of evidence is, in general, a matter for the trial court to decide. Trial courts routinely opine on the reliability of evidence in order to admit or exclude it. Indeed, it is a core part of the trial court's gatekeeping function. *See, e.g., E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549 (Tex. 1995).

20

## Responsive Issue Four

Evidence showed that Fox suffered physical injury from chemical exposure that is more than just mental anguish and that demonstrated both specific and general causation.

**A.**     *Valero mischaracterizes and minimizes the nature of Fox's injury in an effort to make its point.*

Valero next argues that the trial court abused its discretion by granting Fox a new trial because his evidence is legally insufficient to show damages.  In particular, it argues that he cannot recover damages for the injury done to him because he must show a serious physical injury.  In order to minimize Fox's claim, Valero mischaracterizes his claim as one for "mental anguish."  This is not what Fox's claim is about.  Fox's claim is for Post-Traumatic Stress Disorder — a *physical* condition with psychological and behavioral manifestation.

As Dr. Axelrad testified, PTSD is a form of *physical* brain injury resulting from the release of excess stress chemicals.  ROA 1:1266. When under stress, the body releases cytokines that promote an inflammatory response.  ROA 1:1205.  PTSD is not merely anxiety, it is the behavioral manifestation of a very real physical injury.  Valero's discussion of Fox's damage as mere "mental anguish" entirely mischaracterizes his injury and

21

mischaracterizes his case. Fox presented uncontradicted expert testimony that PTSD results from a serious physical brain injury. Valero never took issue with this testimony in the trial court. It still does not take issue, now.

Furthermore, Dr. Rosenfield testified as to the very physical effects of H2S on the brain. Dr. Rosenfield confirmed that breathing in H2S can interfere with the enzyme cytochrome oxidase, an enzyme necessary for brain cells' use of oxygen. ROA 1:1644-45. He also conceded that interference with oxygen use can cause damage to the brain. *Id.* It was not an abuse of discretion for the trial court to take Valero's own witness's testimony at face value.

### B. *Valero never actually argues that Fox failed to show general causation.*

Finally, Valero complains concerning general and specific causation. Valero first correctly notes that general causation asks whether a particular substance is capable of causing injury or a condition in the general population. *See Coastal Tankships, U.S.A., Inc. v. Anderson*, 87 S.W.3d 591, 602 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). Valero then argues that there is no evidence of the amount of toxin to which Fox was exposed. This, of course, is not a question regarding general causation, but one

22

regarding specific causation—toxins causing damage, not in the general population, but in a specific individual.

In any case, Valero's own expert witness, Dr. Rosenfield, acknowledged that Fox was exposed to $H_2S$ and that it is a neurotoxin. ROA 1:1617. He also confirmed that it can cause a number of other symptoms, including headache, dizziness, weakness, exhaustion, irritability, and insomnia. ROA 1:1621-22. These are some of the very symptoms observed in Fox.

Moreover, as Dr. Axelrad testified, at least a portion of Fox's damages stem from PTSD. PTSD is not caused by $H_2S$ exposure but by an extreme stress reaction that causes a release of cytokines within the brain. ROA 1:1205. Exposure is part of the equation, but it is not all of it. Characterizing Fox's claim as entirely a toxic tort claim again mischaracterizes it.

C. *Fox presented evidence of specific exposure to particular toxins.*

Unlike the case law cited by Valero, which presents toxic exposure cases that developed over many, many years of exposure to toxic products from many different defendants, Fox alleges a single, discreet incident where there is only one defendant. *See Borg-Warner Corp. v. Flores,* 232

23

S.W.3d 765, 773 (Tex. 2007). *Flores* considered a suit against a particular maker of asbestos-containing brake pads and a plaintiff's allegations that he had been exposed to these brake pads, as well as brake pads from many other manufacturers and asbestos from other sources. A major concern of *Flores* is that evidence be defendant-specific, so that a defendant that causes only minimal exposure cannot be said to have caused an occupational disease.

In contrast, there is no other defendant in Fox's suit but Valero. There is no other evidence showing the source for the toxins to which he was exposed, and there is causal evidence showing that he did not demonstrate his particular symptoms before exposure but did so after exposure. The trial court did not abuse its discretion by declining to apply a precedent that is, factually, worlds apart from the allegations and central facts of Fox's suit.

## CONCLUSION

Mandamus is not a remedy for every trial court error. It exists for use in cases of manifest and urgent necessity, where a trial court has taken action that is unguided by any legal principle or rule. That is not the situation here. Two trial judges viewed the evidence differently from the

24

jury. The first explained the reasons behind granting a new trial in an entirely sufficient order. The second gave no explanation, nor was she requested to give any such explanation. But even if this did not add up to a failure of Valero's mandamus record, Valero simply cannot justify mandamus in this case. The trial court's action is not egregious. It is not unguided. It is simply different from what Valero would have. It is not an abuse of discretion. Mandamus is completely inappropriate given both the state of the record and the evidence adduced. It should be, indeed must be, denied.

## PRAYER

For the foregoing reasons, Real Parties in Interest Vernon Fox and Mikki Fox, respectfully request that Valero Refining Texas, LLC's Petition for Writ of Mandamus be denied.

Respectfully submitted,

SIMPSON, P.C.

*/s/ Iain G. Simpson*
_____

Iain G. Simpson
State Bar No. 00791667
1333 Heights Boulevard, Suite 102
Houston, Texas 77008
(281) 989-0742
(281) 596-6960 – fax
iain@simpsonpc.com

APPELLATE COUNSEL
FOR VERNON FOX AND MIKKI FOX

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing response is computer-generated and that those portions required to be counted by Rule 9.4(i)(1), Texas Rules of Appellate Procedure, contain 6,420 words, according to the word-count function of the application used to create it. The response is printed in 14-point typeface, except for the footnotes, which are in 12-point typeface.

*/s/ Iain G. Simpson*
_____

Iain G. Simpson

## CERTIFICATE OF SERVICE

I hereby certify that, on August 27, 2015, I served a true and correct copy of the foregoing Response to Petition for Mandamus via electronic service, certified mail, facsimile, or hand delivery on the following:

David W. Burns
Tekell, Book, Allen & Morris, LLP
1221 McKinney, Suite 4300
Houston, Texas 77010
713-222-9542–telephone
713-655-7727–facsimile

James F. Bennett
Megan Heinsz
Dowd Bennett, LLP
7733 Forsyth Boulevard
St. Louis, Missouri 63105
314-889-7300–telephone
314-863-2111–facsimile

Richard P. Hogan, Jr.
Jennifer Bruch Hogan
James C. Marrow
Hogan & Hogan
Pennzoil Place
711 Louisiana, Suite 500
Houston, Texas 77002
713-222-8800–telephone
713-222-8810–facsimile

Alex M. Miller
The Valero Companies
One Valero Way
San Antonio, Texas 78249
210-345-2857–telephone
210-345-4567–facsimile

COUNSEL FOR VALERO REFINING – TEXAS, L.P.

*/s/ Iain G. Simpson*

Iain G. Simpson

# TAB  B

CAUSE NO. 12CV1541

VERNON FOX AND MIKKI FOX ) 212TH DISTRICT COURT
)
)
VS. ) OF
)
NUSTAR LOGISTICS, LP, AND )
VALERO ENERGY CORPORATION ) GALVESTON COUNTY, TEXAS

MOTION TO RECONSIDER

On March 13, 2015, the following proceedings came on to be heard in the above-entitled and numbered cause before the Honorable Patricia Grady, Judge presiding, held in Galveston, Galveston County, Texas;

Proceedings reported by machine shorthand.

APPEARANCES

FOR THE PLAINTIFFS:
    ALTON C. TODD
    SBOT: 20092000

    The Law Firm of Alton C. Todd
    312 S. Friendswood Drive
    Friendswood, Texas 77546
    281.992.8633
    alton@actlaw.com

FOR THE DEFENDANT, VALERO REFINING-TEXAS, LP:

    DAVID W. BURNS
    SBOT: 00785735

    KENNETH TEKELL, SR.
    SBOT: 19764000

    Tekell, Book, Allen & Morris, LLP
    1221 McKinney
    Suite 4300
    Houston, Texas 77010
    713.222.9542
    dburns@tekellbook.com

    JAMES F. BENNETT
    SBOT: 46826

    Dowd Bennett, LLP
    7733 Forsyth Boulevard
    Suite 1900
    St. Louis, Missouri 63105
    314.889.7302
    jbennett@dowdbennett.com

MOTION TO RECONSIDER

March 13, 2015                        Page

Court Reporter's Certification Page              52

THE COURT: The Court calls 12-CV-1541, Vernon Fox and Mikki Fox versus Nustar Logistics, LP, and Valero Energy Corporation.

The Court has before it today defendant Valero Refining Texas, LP's motion to reconsider the order granting motion for new trial of plaintiffs Vernon Fox and Mikki Fox.

Please state your names for the record and who you represent.

MR. TODD: Alton Todd on behalf of the plaintiffs, the Fox --

MR. BENNETT: Jim Bennett for Valero.

MR. BURNS: David Burns for Valero.

MR. TEKELL: Kenneth Tekell, Sr., for Valero.

THE COURT: Sir, you may proceed.

MR. BENNETT: Thank you, Your Honor.

We're here before you on a motion to reconsider, as the Court is aware from having read the papers.

This is a case that was tried over a two-week period with a verdict on December 11, 2014. We had 16 witnesses presented to this jury and over 180 exhibits introduced. At the end of this trial, a 12-person jury -- and we sat an alternate. So there

were 13 jurors here for that entire time. It was a 12-0 verdict in favor of Valero on the issue of causation and damages under the question 2, as well as on all of the other questions presented to the jury, including gross negligence, a consortium claim and punitive damages, which weren't reached because of the other verdicts.

Judgment was entered on that jury verdict by Judge Griffin, and a motion for new trial was filed and argued, as well. And on December 30th, that new trial motion was granted. So we are in front of Your Honor, because as the Court is aware, that's essentially the last day and the last judicial act of Judge Griffin before he left the bench.

The motion for new trial -- I think it is important to focus in on what is not at issue. What is not at issue is any evidentiary ruling against the plaintiff or in favor of the defendant. Every piece of evidence that the plaintiff wanted to present came into evidence. There is no claim of instructional error. All of the instructions that were given were as requested by the plaintiff. There's no claim that I argued anything improperly during the trial or that we did anything prejudicial. It is a pure sufficiency challenge, and the ruling granting the new trial was wrong under all the legal standards set forth in our

opening brief, as well as our reply brief. Because the Court was not present at the trial, I would like to review a few of the key facts, understanding that the Court has read all of the papers.

The issue happened -- or the events giving rise to the case happened on January 12, 2011, when the Texas City refinery operated by Valero had accrued overfill very, very early in the morning and about 278 barrels were released -- the spill happened 5 to 9 minutes -- and, of course, I think the Court knows all the facts are taken in favor of the verdict at this point in time. The spill was over by 5:24, but it's undisputed it was over by 5:35. The temperature was 30 degrees, and so there wasn't fumes coming up off the oil and there wasn't any issue with any sort of vapor cloud.

So the bottom line is that Valero had a crew tank overfill that was over by 5:30 in the morning; and we know for a fact at the scene of the overfill, that there were no vapors and no fumes because every person there was wearing their H2S monitor. Our corporate rep, Mr. Allison, who sat through the whole trial, who was the fire chief of Valero is here today. By 6:00 a.m., he was on the scene with his monitors and he monitored the exact area that Mr. Fox later claimed

he was, came up with a zero reading of any harmful chemicals and no fumes. He personally observed the absence of any fumes. And by 6:30 in the morning, the area was totally safe, totally secure.

Mr. Fox is a 32-year employee of BP, the next door refinery, and he left his office at 5:45, testified that on his initial drive down to a place he was going for work, he had no issues. He called back -- and this is undisputed in the records. He called back at 6:15 in the morning and said everything is okay. He left at 6:30 in the morning to drive back by and came back by this tank when the sun had come up at 6:30 in the morning, which is after we had already set up our fence monitors showing that there were no fumes, no vapor cloud, no nothing.

That evidence is, in our view, totally undisputed, and the jury -- it was exactly the evidence that the jury asked to have read back to it right before it rendered its verdict. And What we proved through this is there was simply no exposure. Mr. Fox had an alarm in his car that didn't go off for fumes. He said everything was okay. He drove around a security barricade that was put up later than when there were any sort of issues with fumes and he had no evidence of any oil on his person or his tank -- or his truck.

And so what we proved in the course of the trial is that he simply wasn't exposed to any harmful activity at all. And then the medicine [sic] confirmed that. He took a urine test and a blood test that very day before the end of his shift. It came back all within normal limits. He went to see a doctor that day at BP who told him that he was within normal limits, based on the lab results that came back. He went to a dermatologist that said any skin issues he had wasn't caused by any exposure. He went home that day and talked to his wife and interacted with her. And she sat in the chair, looked at the jury and said he behaved totally normal that entire day.

And -- so what the jury was confronted with was what we view as extremely strong and almost overwhelming evidence that Mr. Fox had zero exposure whatsoever to any sort of harmful chemicals. He couldn't have been there at the time there were any vapors. There is no scientific support because we had monitors set up at the time he was there. He was wearing a monitor on his person, and his urine test came back. He behaved normally afterwards. And his doctors all said that there was no problems associated with any sort of exposure.

A 32-year employee of BP, then 9 months

later he starts claiming that he has psychological problems and mental problems. Not until July -- 7 months later does he say he is having headaches. He goes to see a neurologist. Undisputed. The neurologist says there's no issue with this exposure causing your headaches because it was progressive. Dr. Eberle up in Houston said that as well, and it confirmed the dermatologist report to the same. And so what the jury was confronted with is facts that show he couldn't have been exposed, multiple forms of monitoring that showed he wasn't exposed and doctors who uniformly say he wasn't exposed and harmed in any way.

Then the jury got to see that Vernon Fox actually lied about his conditions repeatedly. Mr. Fox was on the witness stand on one afternoon when I was cross-examining him --

THE COURT: Hold one second.

(Discussion off the record)

THE COURT: You may proceed.

MR. BENNETT: Thank you, Your Honor.

And so what happened and unfolded at the trial was that Mr. Fox claimed he had psychological issues, all based on his own description of the occurrences and his reporting of symptoms to his doctors, either ones who were hired as part of this litigation or ones he was seeing beforehand. But what the jury heard was that he misrepresented his symptoms repeatedly. He signed in September of 2012, 9 months after this incident, a United States Coast Guard application as Defense Exhibit 1. And it came in and the jury looked at it. And he signed a certification under criminal penalty that everything in it was 100 percent accurate.

A couple of things are significant about that. The first is that he checked a box that he had no anxiety and no depression and no mental disorder and that he was able to do everything that a sea captain would do, which is totally inconsistent with his claimed symptoms at the trial. In addition, he had to go see his family practice physician to get a certification that he was fit for service. Dr. Nguyen, who had been his doctor for 15 years, signed on September 4, 2012, also under criminal penalty, a certification that he was fit and had no mental impairments at all. In addition, Mr. Fox attested to the Coast Guard that during the 9 months after this alleged incident, he had been out on his boat in the Bay of Galveston in the Gulf of Mexico captaining a 23-footer between 6 and 12 times every month. And so he's confronted with this at the trial. He then tells the jury that yes, I know that it was a criminal violation to misrepresent things to the Coast Guard, I understand I signed this certification, but understand that I misrepresented my mental state. And then he says but I did tell the truth about how many times I was out on my boat during those 9 months.

So we leave that day at 5:00 after him admitting that he violated Federal law, but affirming he was out on his boat. He comes back the next morning and tells the jury actually, I did lie on the Coast Guard application, I wasn't out on that boat. And so the jury -- then on recross, he looked the jury right in the eye and said I tell you I did not tell the truth to you yesterday. I mean, he was confronted with a prior inconsistent statement made under oath in his application, but then confessed to the jury, in the middle of the trial, that he had not told them the truth the prior day.

THE COURT: Yes, sir. I've read all of that.

MR. BENNETT: Okay.

THE COURT: I'd like to see if we can move on to your legal argument.

MR. BENNETT: Absolutely, Your Honor.

I think the Court is aware that since this is interlocutory, the Court has the authority to set aside a prior ruling at any time because of the timing of this ruling. We have to present it to you because the -- by a stay of the prior judge was the day that he entered this order. Mr. Fox was required to show that this was against the weight and preponderance of the evidence. If you look at the core of our argument, it is two-fold. The first is that the evidence must be viewed in the light most favorable to the verdict.

THE COURT: Are you referring to the brief that you filed, the motion?

MR. BENNETT: Yes, Your Honor.

THE COURT: What page are you on?

MR. BENNETT: Yes. 13, Your Honor.

We have a series of legal standards that are set out on pages 13 that set out almost all of these key legal points. And so since you've read those, I won't belabor them. But on pages 13, 14 and 15, we explain that the jury is the sole judge of credibility; the expert testimony is not binding on the jury, even if it isn't contradicted, but here it was subject to attack. The jury is not required under the Schott case versus Knight, which we view as the most factually analogous case, to award damages just based on what an expert says because as that Court holds in headnote 3, the jury is the sole judge of credibility and is free to

disbelieve expert witnesses. And the real key to this is that in that case, they held that if the plaintiff's credibility was attacked and the plaintiff gave the information to the expert in order to have the expert render their opinion, attacks on the credibility of the plaintiff mean that the jury doesn't have to believe the expert. And Schott flat-out says that because, as they say, the expert was based on plaintiff's objective reports to him, the plaintiff's credibility was key in this case and the jury had evidence probative on that point; therefore, quote, it was the jury's prerogative to disbelieve his claims about the continuing psychological effect. And so under that legal standard and the standards set out at pages 13 through 15 of our brief, where the injuries are subjective -- which these admittedly are -- and where they're totally based on the plaintiff, the jury is free to disregard all of that evidence.

And we presented evidence -- I think I recounted it and the Court has said that the Court has read it -- that showed that he admitted he wasn't depressed, that there was extremely strong evidence that he hadn't told the truth to his experts and to his doctors because he worked at BP for 2 more years, made more money than he'd ever made, contradicted himself to

the lawyer, grossly exaggerated his symptoms. Even the report introduced into evidence by the plaintiff said that he had an unusual number of symptoms that raise suggestions of exaggeration. And so we think that the trial court erred in granting a new trial under these circumstances because the jury had ample evidence and we viewed it as set forth in our motion for directed verdict that they were actually required to conclude that Valero didn't cause any of these issues.

The verdict form allowed the jury to rule either that the plaintiff had no injuries at all, which was well within the range of the evidence, or that Valero hadn't caused any of them. And in terms of emphasizing the record evidence there, he presented his treating psychologist, who testified under oath that he couldn't say whether we caused him any of his mental problems or whether his work at BP did where he admitted he had been exposed to benzene over the years.

In addition, the new trial motion relied heavily on the testimony of an expert named Pollock, who was not called to testify, but whose deposition was read. I make two points on that. First off, Mr. Pollock is based solely on what Mr. Fox told him, and his credibility was under attack. Secondly, as we set forth in our brief on the section on Mr. Pollock, he

actually simply made conclusory statements that there was causation. He had no actual facts. And we cite cases like the Burrough (phonetic) case in footnote 144 of our brief that that's not enough. But most critically, the jury heard evidence that if the evidence showed that Mr. Fox wasn't exposed to any toxin above a background level, he would have to reformulate his opinion. And so the jury was entitled to do that, as well.

We have presented argument that the foreseeability prong wasn't met, as well. 5 to 15 seconds is not going to cause harm to a 32-year veteran of an oil refinery. We have explained -- I think the Court's familiar with Texas law that says there can be no recovery for mental anguish without serious bodily injury. There's clearly no serious bodily injury here whatsoever.

THE COURT: Let me just stop you right there, and I know that we're going to go out of order.

This has piqued my interest, what they're saying here. Can you just in a nutshell give me your response to that?

MR. TODD: Right.

The response is this, Your Honor: We need to be defining for the Court the standard for the Court

at this point in time.

THE COURT: Okay. Let's skip that a minute, and let's respond to what he just said about negligence and serious bodily injury.

MR. TODD: Okay. There's evidence before this jury, number one, that he was in the area. Their own doctor said -- I can't remember her name -- that he definitely had a major depressive disorder from this event. He never had a major depressive disorder before, never had depression before, never been to a psychiatrist before. And he was in the area.

So I guess what I'm wondering is -- well, I'll get to my argument --

THE COURT: My question is, does there have to be serious bodily injury in order to find mental injury?

MR. TODD: With PTSD at the forefront today, it's my position no. There is some law that indicates physical injury, not necessarily serious physically or a psychological condition. When you start defining pain and suffering and mental anguish, that's a different thing. But otherwise, the Court would be holding that in the absence -- let's say you witnessed a murder and you developed PTSD. You might not have a physical injury. You can get a physical injury actually

from the condition itself, as the doctors did testify. Whenever we have major depressive disorder, PTSD, we are emitting enzymes into our brain that in and of themselves cause physical injury to the brain. So there is physical injury, whether it be from the event itself or from the condition itself. And all the doctors agree that in the brain, when we're emitting these enzymes that we need to make us happy, make us sad, whatever, that get off balance when these conditions occur, that causes brain injury.

THE COURT: Okay. What do you have to say to that?

MR. BENNETT: I have to say to that that that is 100 percent inconsistent with the Texas Supreme Court in the Temple-Inland case that we cite. That page is page 39 and 40 of the brief. In that case, the plaintiff acknowledged being exposed to asbestos. And everybody agreed that the plaintiff was exposed to asbestos and that the Court said -- this is at the bottom of 39. It has been established for over a century that a person placed in peril by another, but who escapes without injury, may not recover damages simply because he has been placed in a perilous damage [sic], nor is mere fright the subject of damage. Here -- and what they go on to say is there has to be

serious bodily injury is what the Court says at page 92 of that opinion. Physical injury is ordinarily necessary for the recovery of mental anguish damages, except within exceptions that aren't here. And what the court goes on to say, which has full application here, is that most Americans are daily subjected to toxic substances in the air they breathe. Suits for mental anguish damages caused by exposure not resulting in disease would clog the courts, compete with other suits. And so even if under the Texas Supreme Court rule they suffer genuine distress, which I suppose would trigger all this brain activity that Mr. Todd is talking about over that exposure, it's not enough. In here nobody said he had any demonstrable medical injury whatsoever. And stress or anxiety isn't enough. And if stress -- and the jury was certainly entitled to find that there was no stress or anxiety or PTSD in this case that caused those neurotransmitters. So if I had to say what case do I think is most on point for us on that, it would be the Temple-Inland case.

THE COURT: Do you have any controverting case law to the Temple?

MR. TODD: Not anything other than what we may have cited and -- but we'll have reasoning on why we're there on that point too, Judge.

THE COURT: We'll give you a chance. Everyone is going to have enough time to talk this morning.

MR. BENNETT: Thank you, Your Honor.

So I think that -- I believe that covers the issue of the -- without serious bodily injury, we believe that the jury was very much entitled to find that Valero was not a substantial factor. And it's really important to explain that nobody tied Mr. Fox's depression to conduct of Valero in any way that would require the jury to accept that. No expert said oh, I can look at this and say this depression is caused by Valero. He testified that he was -- and his experts testified that he was worried about a spot on his brain. He testified that he had stress at BP, he had benzene exposure at BP. He said that he had been very worried by the fact that 15 of his co-workers had died in that explosion. There were a lot of things. And Mr. Pollock, who was his treating psychologist, was flat out asked can you say his mental problems were caused by Valero and not BP to a reasonable degree of medical certainty, and he said no to that.

And then finally, Your Honor, I think that it has to be undisputed this order doesn't meet the standard for a new trial on the issues of gross

negligence. There's not even a mention of it there. That has nothing to do with whether he had PTSD or negligence or -- I mean -- or depression. There's no finding on any of the particular elements of damages in the instructions that the jury gave us zero on.

THE COURT: Let me stop you right there. On Odyssey, I could not find anything except an unofficial copy of the order signed by Judge Griffin. I don't know if the parties have one, but -- does that say "unofficial"? That says unofficial.

MR. BENNETT: Yes. I think this is the version that he signed. I haven't seen an official version.

THE COURT: I just wanted to make sure that I had the correct one.

MR. TODD: That's what I assumed.

THE COURT: Thank you.

MR. BENNETT: So if you go through that, Your Honor, you can see that there is no discussion of the loss of consortium claim of Mikki Fox. There's no description of how there could be causation in this case and how -- I mean, there's a finding, I guess, that the jury should have found depression, but there's no facts that would show how that could be tied to Valero. And so the order is facially deficient, and there's no

**21**

finding about each element of damages on why those zeros for each one aren't right. And, of course, the words "gross negligence" aren't even mentioned in that --

THE COURT: Let's just go a little slower, please, so I can take some notes on how this order, in your opinion, is deficient.

MR. BENNETT: The first way that the order is deficient, Your Honor, is that there is zero mention of how or why there's a new trial on gross negligence. Gross negligence does not turn in any way on any of the matters that are set forth in the order. Gross negligence is a decision for the jury based on the conduct of Valero. And the only thing the order discusses is Mr. Fox's injury, one.

THE COURT: Before you go to your second point, I want to give Mr. Todd an opportunity to respond to that.

MR. TODD: Sure.

If a case is granted a new trial on any point, it grants the entire trial. The order does not have to address every potential point in the case. And that's -- he can cite to no Texas Supreme Court case that requires what he's saying in a new trial order. All the court had to do was to grant as to one thing, one thing alone, and it's a new trial as to everything.

**22**

And I think counsel would agree with that.

MR. BENNETT: We cite --

THE COURT: Do you agree with that?

MR. BENNETT: No, Your Honor. We cite the Pool v. Ford Motor case that says that the Court has to state with -- in what regard the contrary evidence greatly outweighs the evidence in support of the verdict. And we should be entitled to a judgment on that count because that jury rendered that verdict. It wasn't attacked in a post-trial motion and the judge didn't make any findings to set it aside.

MR. TODD: May I address that?

THE COURT: Please.

MR. TODD: He didn't answer my question about if the Court grants a new trial on any point, does it grant it as to the entire trial.

THE COURT: I'm going to give you guys a chance to brief that because obviously you're not going to agree. So from his lack of response, that tells me he's not going to agree with you. So if you can provide proof to me, I would certainly appreciate that.

MR. TODD: Sure.

THE COURT: So we've gone through Point No. 1.

MR. BENNETT: Point No. 2 would be that

**23**

there are -- and this goes to every element of the case -- is that there is no finding of any competent evidence or citation of evidence that would establish that we failed to prove or that the jury was committing error when it found no causation that the -- any depression by Mr. Fox was caused by Valero. And you can read the two pages of the order, Your Honor, and see that there's a description by Judge Griffin signed in the proposed order, as I think everyone agrees, where it says that, okay, there was evidence of depression and major depressive disorder. And the only statement is that this resulted from the defendant's negligence. There is no citation or description of any evidence that shows how Judge Griffin made the leap from finding that he was depressed to causing it, to it being caused by Valero, none whatsoever.

THE COURT: And you're saying there needs to be specificity?

MR. BENNETT: There does, Your Honor, under that Pool versus Ford Motor Company case at 715 S.W.2nd 635. The Court should state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict. And that is a requirement under that case, as well as in re Toyota Motor Sales that we cite, which requires the Court to identify legally

**24**

appropriate reasons and be specific enough to indicate that the Court looked at that evidence. And there's no description of any evidence whatsoever of tying his injuries to any causation. So that's number two.

THE COURT: Mr. Todd disagrees with the Toyota Motor Sales and your response brief, as far as how it's applied here.

MR. TODD: Right. And Pool was -- doesn't even apply to this case because that's not a new trial case. Toyota does, but --

THE COURT: Okay.

MR. BENNETT: I have two more points, but I don't want to -- did you want him to respond fully?

THE COURT: Yes, go ahead, please.

MR. TODD: On that point alone, I guess I need to actually just start going to the case law.

THE COURT: Is this in your reply?

MR. TODD: It is in the reply, but also I think the Court probably has a copy of the Toyota case. But --

THE COURT: I do not have a copy of the Toyota case. If lawyers ever want to give me cases, I will certainly always take them and read them. Of course I follow up on Westlaw for any negative treatment.

MR. TODD: This is the Toyota case, Judge. And I put a couple of tags on there on things that seem to me to be significant as to -- because now we're getting into the content of the order and what does the order require. Before getting to the Toyota case, there's the in re United Scaffolding case, which was decided by the Supreme Court in 2012 that references back to the in re Columbia case, which was the Supreme Court case that first decided that they required more in an order than just in the interest of justice.

And this is now the in re United Scaffolding case, the Supreme Court stating: In in re Columbia, we reiterated the considerable discretion afforded trial judges in ordering new trials. That rule has both juris prudential justifications, parentheses, trial judges actually attend the trial and are best suited to evaluate its deficiencies and practical justifications, parentheses, most trial judges are understandably reluctant after presiding over a full trial to do it all over again. Therefore, in considering how detailed a trial court's new trial order must be, as well as what level of review it is subject to, we must both afford jury verdicts appropriate regard and respect trial court's significant discretion in these matters.

Now, in the in re Toyota case -- well, first, before we get to that, there is a case out of the 14th that was decided August of this last year, which was in re United Services Auto Association, 446 S.W.3rd 162. In it, it says that -- now it's referring back to Toyota. The court held that when a trial court enters an order for a new trial that facially complies with the requirements of Columbia Medical Center and United Scaffolding, an appellate court may conduct a merits-based review of the reasons given. Then in the Toyota case, where it actually states what the rule is for the order, they enter into that in concluding that it did not -- we noted that Columbia's purpose, quote, would be satisfied so long as the order provides a cogent and reasonably specific explanation of the reasoning that led the Court to conclude that a new trial was warranted. We acknowledged that Columbia focused not on the length or detail of the reasons the trial court gives, but on how well those reasons serve the general purpose of assuring the parties that the jury's decision was set aside only after careful thought and for valid reasons.

We held that a trial court does not abuse its discretion, so long as its stated reason for granting a new trial, one, is a reason for which a new

trial is legally appropriate, parentheses, such as well-defined legal standard on a defect that probably resulted in improper verdict, and, two, is specific enough to indicate that the trial court did not simply parrot a pro forma template, but rather derived the articulated reasons from the particular facts and circumstances of the case at hand.

THE COURT: One second. That's exactly what you have alleged, that it was a parrot of a pro forma template. So tell me how it would not have been that, in your opinion. I mean, you're arguing that it is. Can you give me an example of how it would not be?

MR. BENNETT: Well, there's two points in response to this. The first is, of course, that is discussion of appellate review. This is interlocutory. And as we cited in our reply brief we filed yesterday, you actually have total plenary authority under the Rush v. Barrios case to decide this without regard to this requirement. But on the specific question that Your Honor has asked, the Toyota case requires that the reasoning be specific enough that they did not parrot a pro forma template. The order is -- you know, it's marked unofficial because it was -- this is as submitted by the plaintiff. And what's deficient on the causation element is it is pro forma for the court to say the

trial -- the prior court to say at trial, plaintiffs presented evidence from these experts about depression, and then it says resulted from defendant's negligence. There is zero specificity on how the evidence could show that we caused this depression, and there's large amounts of contradictory evidence on that point. So it is not specific and it is pro forma and it is conclusory when the court just simply identifies the depression and then says that resulted from our negligence. And that's the specific deficiency on the causation element that we are relying on on that.

MR. TODD: If I may, also, Your Honor.

THE COURT: Please.

MR. TODD: There's a couple of things at play here. There's really -- we're looking at three different standards, and they kind start getting blended together here. One is the standard at the court of appeals where they sit and look at a cold record. The second is where you have a trial judge, what we have here, Judge Griffin, who actually sat through 2 weeks and listened to the testimony along with the jury and it's granted a new trial. Then we have, Your Honor, a third standard, where we're still at the trial court level, but a judge who didn't have the benefit of having heard the evidence or seen the witnesses testify or look

at the documents.

And one of the appellate decisions in a dissenting opinion -- I can't remember if it was Buzbee or who it was, a different Buzbee -- on appeal, that what he said, we need to look to the Fifth Circuit, as far as following guidance where you give respect to what the jury does, but also to the trial court. And we don't have a standard yet developed by the Texas Supreme Court as to how a trial court, when it's looking at the evidence on determining whether a new trial is warranted, what that standard exactly is and how an appellate court, which typically doesn't have the benefit of the input of the trial judge, but only the cold record. So here we are dealing with a record and a trial that the only people who were present when it occurred are the lawyers, and we certainly have a disagreement as to what that evidence shows.

THE COURT: How do you respond to that, the fact that I did not sit through the trial?

MR. BENNETT: There's -- first off, on the legal standard, there is two points on that issue. First off, it is unquestionably that it is interlocutory. Three points, really. It is interlocutory. And under the Rush case, you have discretion to do this without any restriction

whatsoever. As the court in Mesa (phonetic) Argo states, your power is full, entire, complete, absolute, perfect and unqualified. Then courts have actually looked at this exact situation. And in our reply brief we cited this in re Baylor Medical Center case from the Texas Supreme Court in 2008, which says that we're essentially obligated. Because this order was signed on the last day, your coming on the bench, we should not be prejudiced by the fact that you, by necessity, have to decide this. And we've cited a series of cases that talk about how a writ of mandamus will not lie against the successor judge in the absence of a refusal to grant the relief that we ask. So the courts have established that that is the right procedure. But there is no support on a new trial motion or a motion to reconsider for the idea that what matters is the judge's credibility finding.

What matters is the jury's verdict, when you review this record. The jury, as we cite on pages 13 through 15 of our brief, is under any standard of review the sole judge of credibility. And especially since you don't get the benefit of Judge Griffin having signed an order that says how he thinks there was causation here, that you have to take a, as they say, plenary or, you know, a do-over review of the evidence

that both parties have cited to look at that causation point because he did not meet the specificity requirement of Toyota, and they cite this case that says that they have to articulate its reasons on the reason for overturning it. And that order says nothing about causation and the facts. So you are without any guidance from what Judge Griffin thought on that, even if it were binding, which we don't think it is.

MR. TODD: If I may.

If we look at the Toyota decision, Your Honor, in my second little tab there, which is going to be on what's page 13 -- and I've actually highlighted the portion there on the bottom where it says while review of the cold record -- and that's what we're doing here. While review of the cold record appears to be exactly what was needed in this case -- and as the Court may be aware, in this particular case, there was a question about whether the plaintiff or the decedent, I think it was, had their seatbelt on. Plaintiff in limine'd that out before they started trial. And during trial, through the police officer, the plaintiff -- an optional completeness -- offered the evidence that didn't have the seatbelt on. Then the defense counsel stood up in closing argument and argued didn't have the seatbelt on. Plaintiff stood up and

objected and said that's a violation of the motion in limine and the court agreed. And then the Supreme Court said on its face the plaintiff waived it, and that was the sole basis for granting the new trial, was the fact of violating the motion in limine. And on the face of the record, it was obvious that the court got it wrong because the plaintiff had waived it. So that's what happened in this instance.

But going on and reading, it says that limitation frequently places appellate courts at a disadvantage in evaluating whether there is a good cause to grant a new trial. As we recognized in Columbia, there are differences between the review that can be accomplished by appellate judges who have only the record to consider, as this Court is sitting, and trial judges who have seen the parties and witnesses and sense the effect of certain evidence or occurrences on the trial. And even onto the next page, toward the end, often the trial court's presence and observations throughout the trial will be indispensable in evaluating whether the requisite good cause exists to justify setting aside a jury verdict and granting a new trial.

We would submit, Your Honor, that that's -- in all due respect -- I mean, I wish the Court could have been there. It would make this a lot easier. But

the trial judge who was there, who had the opportunity to make the decision, said that a new trial was warranted based upon what he saw. What they're asking the Court to do is to make a Court of Appeals' cold record, merits-based review of the entire record. And that's not what Toyota requires. That's not what in re Columbia requires. That's not what in re Scaffolding requires. And I would submit, Your Honor, that as far as this case, because the Court didn't have the benefit of hearing the evidence, that we're limited to whether the order, on its face, meets the requirements of Toyota.

And as the Court's pointing out, trial courts can't act as courts of appeals. Trial courts aren't equipped to sit down and read 2 weeks of trial testimony. Trial courts don't typically have briefing clerks that can provide -- these are the points and write an opinion as they would suggest, which is -- how many pages is Toyota and how many pages did they devote, in a very simple question, to what the evidence was? That's not what trial judges have to do.

THE COURT: Response?

MR. BENNETT: Yes, Your Honor.

This is interlocutory, and it is exactly what the Texas court says you can do and that we're

actually required to bring this to you to do, a merits-based review, which is what the Court of Appeals actually does, as well. But you are not bound by any discretionary standards. Because this is a final order and because it's now been put in your lap, you can do that review and need to do that review. But what it really drives home is you don't have to look at the whole record, of course. You only have to look at what -- you can look at the whole record, but the parties have filed extensive briefs that direct you to it. But it really points out the deficiency on the causation part of Judge Griffin's order. Because what you should be able to do is look at, okay, well, what does Judge Griffin say is the basis for causation. You should be able to look in there and say, well, I find that they caused that because I find that he actually was there. The jury couldn't -- you know, the jury was wrong to do that, it was against the manifest weight of the evidence. I find that he was there close enough in time so there's causation that -- and that the BP employment couldn't have been the causation.

And so what -- the reason why this situation is different than the one that Mr. Todd is putting forward is Judge Griffin doesn't, with specificity, say here's the evidence that I am finding

the evidence had to believe on causation. You should be able to look at that two-page order and say here's why he overturned that no -- the zeros on question 2, and he just doesn't do that.

THE COURT: So are you suggesting there should be, for example, findings of facts and conclusions of law incorporated into the order?

MR. BENNETT: I don't think that there has to be -- I think that the standard is -- for appeal, at least, would be the Toyota standard, and that would require him to at least specifically identify what piece of evidence and what -- that's what the courts look at, is they say, well, the judge at least identified this issue versus that issue and here's why. You can read his order all day long and you can't find a single one piece of evidence where he says here is why I find that Valero's negligence caused this situation. You can -- it's two pages. You can look at it. All he says is which is caused by Valero's evidence. Not a single piece of evidence whatsoever.

THE COURT: Mr. Todd?

MR. TODD: Well, just again, the order on its face meets the requirements of Toyota, and to me that's what we're here about. Also, as far as the record, I don't think the entire record has been

provided to the Court, but only parts of the record. And in in re Mark Athens, which was decided February 13 of this year -- and this is a copy of that --

THE COURT: Thank you.

MR. TODD: -- opinion where the record wasn't complete and the court disagreed with the position that it didn't have to be the complete record. In fact, in that particular case, it was -- the record was provided, but the exhibits weren't. And the court says we're not going to give you mandamus because of that, because of the record.

And this is something -- I digress a little bit. The courts are really in a flux right now as it relates to this thing on mandamus. Mandamus has historically been an extremely difficult remedy to achieve from an appellate standpoint because it requires an abuse of discretion, meaning that the court had no guiding principles, had nothing to go by. We had the benefit of sitting here for 2 weeks for one thing. That in itself is a guiding principle. But then they've mixed it with this merits-based review. And by the way, as far as merits-based review, the Appellate Court's interpreting what the Supreme Court said said that the Appellate Court may make a merits-based review. It's not compelled to.

Now, we would submit that we can't second-guess Judge Griffin or we're going to get second-guessing all over the place all the time we have a circumstance like this occur. In this particular instance, the judge's obligation is to make sure that a fair trial occurred; and that if it didn't and there's reasons why a plaintiff is entitled to another -- or even a defendant, it wouldn't make any difference who it was -- that if it's necessary for the ends of justice ultimately be served, that another trial be allowed. This was not taken lightly by the court. I didn't file the motion lightly because it requires me to come back down here too. And we would submit that under the existing authority, as we have it today, this order is sufficient and meets the requirements of in re Toyota.

MR. BENNETT: I think, Your Honor, I would start to repeat myself, but the only thing I would ask is that if -- you look through that two-page order and see if there's a single piece of evidence that ties depression to conduct of Valero, and I am confident that it's not there.

THE COURT: Is there anything further?

MR. TODD: I would just -- if I could, just to show you where the courts are on this. And this --

THE COURT: Are you on the Toyota case or a

different case?

MR. TODD: This is an in re Wyatt Field Service Company, and I'll leave that with the Court, even though it has my notes and my stickies.

THE COURT: You can submit another one. That would be fine.

MR. TODD: I mean, I don't have any problem with my notes and things.

MR. BENNETT: It doesn't bother me either. I'm going to tender our cases at the end of this.

THE COURT: Thank you very much.

MR. TODD: But, for instance -- now, this is in a dissenting opinion by Justice McCally, and the majority was actually written by Justice Jamison. And what Justice Jamison, in her part of the opinion says, ironically, although the high court has directed trial courts to articulate a well-defined legal standard, is one indicia that it's new trial order is legally appropriate. I don't think anyone is arguing the standard in this instance. I think it's whether the facts are stated sufficient to support the standard as I understand the position; is that right?

MR. BENNETT: We don't believe that the order meets the standard, but we also don't think that that matters for purposes of interlocutory review.

MR. TODD: I guess my point here is the standard here is the sufficiency of the evidence and whether it's against a great weight. That's what I'm saying.

MR. BENNETT: Yeah. We articulate the exact same standard.

MR. TODD: Right. That's the way I understood it.

And then she goes on to say it has annunciated a new standard of review for intermediate appellate courts -- it doesn't say trial courts -- intermediate appellate courts to use to implementing its directive, the merits-based review. But the interesting part comes over to the dissenting opinion, Sharon McCally. She says as a question of first impression of this court, the majority decides the standard by which the Court of Appeals performs such a merits-based mandamus review. Instead of the traditional mandamus standard, abuse of discretion, the majority adopts the factual sufficiency review not only affording no discretion to the trial court's decision, but also affording full deference to the jury's determination presumed -- determination of credibility. The Texas Supreme Court has not articulated the standard we should apply; however, in repeatedly affirming the discretion

of the trial court to grant new trials, the Texas Supreme Court has implicitly rejected the standard we adopt today. Further, the Texas Supreme Court placed strictures on the trial court's discretion while explicitly referencing the successful Fifth Circuit approach as a model. Therefore, I suggest we adopt the Fifth Circuit standard for reviewing such orders because it is a standard that is structured to afford deference to both the jury's verdict and the trial court's necessary oversight.

MR. BENNETT: And, Judge, in response to that, the very first case that we cite in our brief is Baylor Medical Center at Garland, relator Supreme Court of Texas, 2008. What happened in that case is the Williamses brought a medical malpractice case. The case was tried to a jury which found in the defendant's favor. On May 6, Judge Joe Cox signed a take-nothing judgment, but 82 days later granted a new trial after further hearings. In the meantime, Judge Nancy Thomas succeeded Judge Cox. Two months later, Judge Thomas vacated the new trial order and reinstated the judgment on the jury verdict. It's our exact facts. And what the Supreme Court did in that case was overrule the -- overruled the decision. And they say that you can look at this in a total plenary manner.

MR. TODD: The problem with that is that's before Toyota, before United Scaffolding. That's the point. Those are the cases that deal with articulation that a trial court must set forth. And what is that? Is it going to be a two-page order, as we have here, or is it going to be a 30-page opinion, as the court wrote out? Findings of fact and conclusions of law is what it almost seems to be. And if the Supreme Court wanted that, that's the place for that decision to be made.

MR. BENNETT: Garland is on point and I think would be instructive.

The only other observation I would make about this is there's a lot of discussion about overruling Judge Griffin's post-trial motion. But what's happening here as well, is overruling a 12-0 verdict by the jury where we had 13 citizens of this county here for 2 weeks who are in charge of assessing credibility and who are in charge of doing -- of looking at these things and who are entitled to disregard the expert opinion.

And so when you're looking at who's in the best position to judge whether this is the right result or not, I would urge the Court not to forget that Texas places that in the people that are in that box.

MR. TODD: And I know it's not a tennis

match and I apologize, but this is important.

THE COURT: No. I'm fine. Go right ahead. I enjoy the bantering.

MR. TODD: I suspect that we might be able to find one or two cases in Texas jurisprudence where Valero has taken the position that the jury got it wrong, and we can probably find a few of those.

MR. BENNETT: Not any one that I've tried.

MR. TODD: Because this is the first one you've tried here.

MR. BENNETT: I've tried a few other places.

MR. TODD: Maybe we should ask your client.

THE COURT: Well, let's not make it personal. Let's rely on the law. No reason to --

MR. TODD: Here is the United Scaffolding case.

THE COURT: That's the plaintiff's cases?

MR. BENNETT: And this is every case we cited. You can throw it away when you're done. They're in the order that we cited them in the brief.

THE COURT: I appreciate that.

MR. TODD: Now, should we put ours in a notebook for you, Your Honor? Would it be easier for you?

THE COURT: No, sir. I'll just clip them together.

MR. TODD: I'm not going to be at a disadvantage because it's not a pretty notebook?

MR. BENNETT: I think you're going to be treated just fine.

THE COURT: I really appreciate the time. And I can tell you in the future what we will do is ensure all civil hearings are set at 10:00. I know that there are so many of you that come through and are waiting, and I'm trying to juggle a criminal docket and a civil docket, and we'll try to be considerate of your time.

MR. BENNETT: Thank you, Your Honor. On behalf of our client -- and I'm sure Mr. Todd agrees -- we appreciate your time and attention and our clients are glad to be here.

THE COURT: Thank you. I can't tell you how much I really enjoyed your hearing this morning.

MR. BURNS: Your Honor, I have one other matter to bring up that's not on the new trial motion that Mr. Todd and I argued before Judge Griffin back on the 30th also, the same day we did this, that dealt with the exclusion of a couple of defense experts. It's not set this morning. I don't intend to argue it this

morning. But I was looking for the Court's guidance on -- I need to reset that. It was never ruled upon, to my knowledge.

MR. TODD: That's probably the better thing, to reset it as perhaps we do not anticipate a response. So the hearing would probably be very short.

THE COURT: Just get with Jo Ann, my court coordinator. She handles all my scheduling. Nothing gets put on that calendar without Jo Ann giving it her blessing. She just basically tells me what to do. Thank you.

MR. TODD: May we be excused?

THE COURT: Yes, sir. Thank you again.

MR. TEKELL: You inquired yesterday who I am.

THE COURT: Yes, sir.

MR. TEKELL: I represent Valero, and I would like to speak for this case because they are a longtime client of ours. And I think I have some things to say --

THE COURT: Mr. Todd, it appears that there's some more testimony I believe that this gentleman is asking to give to the Court.

MR. TEKELL: I want to argue this case for 5 minutes, put it in perspective.

THE COURT: Is it regarding the motions that have been filed? Have you given Mr. Todd adequate notice of what you intend to discuss?

MR. TEKELL: Well, yeah, it has to do with a new trial and your granting BP -- I say BP -- Valero's motion. It has everything to do with it.

THE COURT: Sir, I guess come on back.

MR. TEKELL: I know Mr. Todd's probably bored with me. We spent months together in trial.

MR. TODD: We can tell who's paid by the hour.

MR. TEKELL: If that were the case, we won't take this personally.

I would just like to address -- no more than 5 minutes of your time.

THE COURT: Please, sir. Just state your name for the record and spell it.

MR. TEKELL: My name is Kenneth Tekell, Sr., T-E-K-E-L-L.

Let me tell you why I am here and why I want to speak to this issue. To put it in the context -- and this will be fairly brief -- I have spent several lifetimes it seems in the 212th Court. I have been down here for four trials in this court. I have been here week in and week out, at least once and

sometimes twice a week, in defending BP in cases before Judge Susan Criss. I have been in this courtroom more than -- and I don't say this as bragging. It's probably the sign of a fool. I have been in this court for more days than any other civil lawyer probably. I'll say not only probably, but for sure than any other jury trial lawyer in the history of this court. In the history of this court, I would like, by my having been here and being involved in jury trials, I would like to speak to the issue. I just want to give you the background.

THE COURT: Thank you, sir. You may proceed.

MR. TEKELL: I have been a trial lawyer for 52 years. I have been a jury trial lawyer for 52 years. Mr. Todd has been a jury trial lawyer for almost as long as I have, but not quite. He's a good many years younger, but he has been here. He knows all about jury trials. And that has been my stock and trade. That's been Mr. Todd's.

I have, as I say, tried numerous cases in this very courtroom. I have been in Judge Cox's court trying jury trials in that court. One of them Mr. Todd, another one Mr. Buzbee. I have been down here. I know what goes on in jury trials. I want to let you know I have had a lot of experience with it.

Now, jury trials. This case was tried to a jury. Somebody paid a jury fee. Somebody wanted a jury to decide this case. And the jury trial is something that is held in very high esteem and regard throughout the United States, the preservation of the jury trial. And there is a recent article in the Texas Bar Journal that speaks to this by our president of the state bar. Jury trials foster ethics, professionalism, efficiency in our justice system and most importantly protect and preserve our jury system. The trials by jury promote those things.

Also, a right to a trial by jury is the very foundation of our liberties and freedoms. The same article. To me there's no higher ideal than the right to trial by jury. We must not -- quoting Alexander Hamilton, we must not allow that liberty to die, civil jury trials. This was written by Trey Apffel, who hangs out around in Galveston most of the time when he's not in Austin dealing in State Bar business. He quotes having been in the organization of ABOTA, American Board of Trial Advocates, of which I was a founding member in Texas, in which Mr. Todd has been a member for many years. And that organization is dedicated to the preservation of the jury system.

When we came to trial in here -- and I've

been representing, through our law firm -- not me personally, but our firm -- Valero for years. And Valero is a longtime client of ours. And I felt out of necessity that I might come in and speak on behalf of our longtime client that this order of Judge Griffin's should be set aside. What we've had over a history of granting new trials, since I've been there for all of it, most of it, in times past, a district judge could just say I'm giving a new trial and not have to make any explanation for it. What that allowed was some judge to decide that, hey, I know better than a jury or I want to do it on behalf of somebody maybe that I've known a long time, set aside the jury verdict. But now they've started changing that, and it has developed into what we have now in the cases cited by the lawyers. It is something that is very important, and that is to maintain jury verdicts. And the cases cited and the evidence, as argued by Valero counsel, indicates that Judge Griffin does not indicate any part of the evidence that suggests in any way the evidence now -- setting the evidence in his order as to why it should be set aside. This was set aside on the last day that he was in office. And for several reasons, I suggest, including the law in the last-minute setting aside, is something you should look at very carefully. I know you will.

There was really no reason spelled out in that order. I think on behalf of Valero that you should consider that very seriously. And also that you should consider protecting the right to trial by jury. That's what we came in here for. That's what they spent 2 weeks here for. That's what I have been spending my lifetime doing, is relying upon jury verdicts, unless there's something desperately wrong with what that jury did. And I don't see anything in there desperately wrong cited in the order very probably by Mr. -- excuse me -- by Mr. Todd setting aside anything based on the exact evidence.

A jury fee was paid. Deliberations by a jury of peers of this plaintiff and Valero -- they heard all the evidence. They were 12-0 in favor of Valero. And that is something that I think you should seriously consider, along with the papers that have been filed and along with the arguments that have been made.

You know, I may sound a little bit emotional about this and I do get a little bit emotional when we're talking about setting aside jury verdicts, which as we all know is the one thing that we need to preserve and be made sacred. If there's something wrong with this one, this jury, it certainly wasn't spelled out in that order.

With that, thank you for your time.

THE COURT: Mr. Todd?

MR. TODD: Over the last 20 years, Mr. Tekell will also agree that there has been an incredible increase in reversal of jury verdicts at the request of defendants, including Mr. Tekell's firm, who very much appreciates and stands up for the jury system. They have advocated the same argument on why it should be reversed. And there have been more cases reversed because -- in jury findings in this state in the last 20 years than there ever was in the jurisprudence before.

Now, we have to look at the order. In Toyota -- this is another portion of that case -- a new trial order must be understandable, reasonably specific -- see Columbia 290 S.W.3rd 213 -- cogent, legally appropriate, specific enough to indicate the trial court did not simply parrot a pro forma template and issue, quote, only after careful thought and for valid reasons. They're asking you to tell Judge Griffin that he did not use careful thought and that he had no valid reason.

Now, they have reasons. They represent a client. That's understandable. His duty is to the State of Texas and to the system of justice. I submit that we defer to Judge Griffin. Despite the eloquence or whatever they may want to say, it doesn't change the fact that the jury found negligence and as Judge Griffin says, should have found damages.

THE COURT: Anything further?

MR. BENNETT: The only thing I would like to make sure of is you have our reply brief that was filed yesterday.

THE COURT: I do.

MR. BENNETT: Okay. I believe that that addresses the points and you fully heard us.

THE COURT: Anything further?

MR. TODD: I don't know. I'm waiting to see if there is anyone else.

MR. TEKELL: The only thing I can say is I have never moved to set aside a jury verdict.

THE COURT: I want everyone to note you are free to speak as long as you like.

Listen, gentlemen, you can rest assured that whatever I decide, the Court of Appeals will tell me if I'm right or I'm wrong.

Thank you.

(Hearing concluded at 10:34 a.m.)

REPORTER'S CERTIFICATE

THE STATE OF TEXAS )
COUNTY OF GALVESTON )

I, Leslie A. Kesterson, Official Court Reporter in and for the 212th District Court of Galveston County, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of all portions of evidence and other proceedings requested in writing by counsel for the parties to be included in this volume of the Reporter's Record, in the above-styled and numbered cause, all of which occurred in open court or in chambers and were reported by me.

I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

I further certify that the total cost for the preparation of this Reporter's Record is $300.00 and was paid by Tekell, Book, Allen & Morris, LLP.

WITNESS MY OFFICIAL HAND this the 19th day of May, 2015.

/s/Leslie A. Kesterson
Leslie A. Kesterson, Texas CSR 5280
Expiration Date: 12/31/2016
Official Court Reporter
212th District Court
Galveston County, Texas
600 59th Street, Suite 3306
Galveston, Texas 77551

# Tab B

Request for Oral Hearing

Filed: 9/11/2015 10:27:08 AM
JOHN D. KINARD - District Clerk
Galveston County, Texas
Envelope No. 6881639
By: Shailja Dixit
9/11/2015 11:45:47 AM

CAUSE NO. 12CV1541

| | | |
|---|---|---|
| VERNON FOX AND MIKKI FOX | § | IN THE DISTRICT COURT OF |
| VS. | § | GALVESTON COUNTY, TEXAS |
| NUSTAR LOGISTICS, LP., and VALERO ENERGY CORPORATION | § | 212TH JUDICIAL DISTRICT |

## REQUEST FOR ORAL HEARING

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, **Valero Refining-Texas, L.P.,** Defendant in the above entitled and numbered cause, and respectfully requests that the Court set its **Motion Requesting the Trial Court to Provide Its Reasons for Refusing to Enter Judgment on the Jury Verdict** filed on September 11, 2015 on the Court's hearing docket for the ___ day of _____, 2015 at ____ a.m./p.m.

Respectfully submitted,

**TEKELL, BOOK, ALLEN & MORRIS, L.L.P.**

*/s/ David W. Burns*

_____
DAVID W. BURNS
State Bar No. 00785735
1221 McKinney, Suite 4300
Houston, Texas 77010
(713) 222-9542
(713) 655-7727 Facsimile
Email: dburns@tekellbook.com
**ATTORNEYS FOR DEFENDANT,
VALERO REFINING-TEXAS, L.P.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all counsel of record by Efile/Eserve, and/or Facsimile on this the **11th** day of September, 2015.

*/s/ David Burns*

_____
DAVID BURNS